HOUSTON OIL CO. OF TEXAS v. CHOATE
et al.  (No. 294.)

(Court of Civil Appeals of Texas. Beaumont.
June 9, 1919. Rehearing Denied
June 18, 1919.)

1. BOUNDARIES &—40(1) — QUESTIONS FOR JURY.

In trespass to try title, location of eastern boundary line of certain survey *held* for the jury.

2. APPEAL AND ERROR &—729—ASSIGNMENTS OF ERROR.

Where record shows, as to plaintiff in error's assignment, that the evidence was insufficient to raise an issue which was submitted to the jury, that there was evidence on the point, and no motion was made to set aside the findings of the jury, or predicated on any action of the court in that connection, the appellate court is not required to go into an exhaustive examination of evidence.

3. BOUNDARIES &—3(5)—FOLLOWING COURSE AND DISTANCE.

When the objects, natural or artificial, called for by the field notes, cannot be found on the ground, or their previous location accounted for, then course and distance will be followed.

4. BOUNDARIES &—3(3)—CALLS—OBJECTS ON GROUND.

First importance is to be given to calls for objects on the ground, and if such objects can be identified, or if they have been destroyed or have disappeared, but their previous location can be shown, then the lines will be run accordingly, and the mere fact that the primitive landmarks have disappeared does not authorize the limiting of the lines and confining of the boundaries by calls for distance in the field notes.

5. TRESPASS TO TRY TITLE &—27—OUTSTANDING TITLE.

Generally a defendant, relying on an outstanding title in some third person to defeat plaintiff's recovery, must show such outstanding title is a valid one, and the mere fact that some kind of an outstanding title appears is not a good defense.

6. HUSBAND AND WIFE &—262(1), 267(8)— COMMUNITY PROPERTY—PAROL EVIDENCE.

Property conveyed to the wife, without any recitation showing it to be her separate property, is presumed to be a part of the community, which presumption becomes conclusive as to purchasers from the husband for a valuable consideration without notice, and cannot be affected by parol evidence showing the property to be the wife's separate property.

7. HUSBAND AND WIFE &—263—COMMUNITY OR SEPARATE PROPERTY—PAROL EVIDENCE.

Property conveyed to the wife, without any recitation showing it to be her separate property, may, as between the husband and wife or their representatives, and as against all persons not purchasers for value without notice, be shown to be her separate property, by parol as well as other evidence.

8. LIMITATION OF ACTIONS &—76(3)—INTERVENING COVERTURE.

Under Rev. St. 1911, art. 5711, where limitation began to run before a married woman acquired title to the land, it would continue to run, notwithstanding the disability arising subsequently by reason of the title being vested in her as her separate property.

Error from District Court, Hardin County; L. B. Hightower, Sr., Judge.

Suit by Houston Oil Company of Texas against Mrs. Polly Choate and others, in which Mrs. D. P. McLoughlin and others intervened. Judgment for interveners, and plaintiff brings error. Affirmed.

Kennerly, Williams, Lee & Hill, of Houston, for plaintiff in error.

Smith & Crawford and Leon Sonfield, all of Beaumont, D. F. Singleton, of Kountze, and Geo. G. Clough, of Galveston, for defendants in error.

CHILTON, Special Chief Justice. At a former term of this court an opinion was rendered reversing and rendering in part and remanding in part the judgment of the trial court appealed from in this case, Associate Justice BROOKE delivering the opinion of the court. Chief Justice HIGHTOWER, having formerly been of counsel in the litigation, did not participate in the decision. In due time a motion for rehearing was filed by the losing parties, defendants in error, and such motion was still pending when Associate Justice WALKER became a member of this court. Justice WALKER, upon consideration of the case on the motion for rehearing, found that he was unable to agree to the correctness of the former disposition of the appeal. This situation having developed, and a third member of the court being necessary to a decision, Chief Justice HIGHTOWER certified the fact of his disqualification to the Governor, who thereupon appointed the writer as Special Chief Justice to sit in the case with the other two members of

the court. A majority of the court as now so constituted finds, upon consideration of the case on rehearing, that it cannot assent to the former disposition of this appeal, and therefore this opinion.

The David Choate, Jr., one-fourth league of land is located in Hardin county, on the north side of Pine Island bayou, and extends back directly north from the bayou 5,250 varas. At 3,832 varas north of the bayou the Choate survey comes in conflict with the A. W. Smith league, all that part of the Choate north of a line running across the Choate east and west, and intersecting the west line of the Choate at 3,832 varas, being within the conflict. At 1,250 varas north of the bayou the Choate comes in conflict with the Uriah Davidson league, all that part of the Choate north from a line running across it east and west, and intersecting the west line at 1,250 varas north of its southwest corner, to the south line of the A. W. Smith league, being in the conflict. The David Choate survey was patented in 1848, the A. W. Smith and Uriah Davidson both in 1835, the Smith and the Davidson being, therefore, the senior grants.

This case involves the rights and titles in the land embraced within the lines of the conflict between these surveys. Plaintiff in error is the owner of the Smith and Davidson surveys, and originally instituted this suit against Mrs. Polly Choate, John W. Davis, and others, then the owners of the David Choate grant, to recover title and possession of the land within the conflict. Plaintiff afterward dismissed its petition, but prior to this certain parties, being the successors in title of Polly (also called Mary) Choate, and John W. Davis, both deceased, had intervened by proper pleading, seeking the recovery of the land in question, and the case was tried with these interveners occupying the attitude of plaintiffs. The interveners asserted title also by limitation, as the result of occupancy and use of the David Choate grant by them and their predecessors in title. The result of the trial was a verdict and judgment for the recovery of the land involved in favor of such interveners, the defendants in error in this appeal.

[1] The first question presented is as to the correct location of the southeast corner of the Choate and its east boundary line. In the original field notes of the Choate, and in the patent afterwards issued, this grant is described as follows:

"Beginning at the S. W. corner of Lefroy Guedry survey on said bayou, from which a pine marked L. G. bears south 12 west $2^2/_{10}$ varas, another marked X bears south 81 deg. west $2^4/_{10}$ varas; thence up said bayou with its meanders north 25 west 332 varas, north 58 deg. west 170 varas, west 117 varas, north 70 deg. west 185 varas, south 15 west 75 varas, south 82 deg. west 228 varas, south 50 deg. west 350 varas, south 18 deg. west 300 varas, to corner from which a pin oak marked D. C. brs. N. 59 deg. E. 4 varas, another marked X bears S. 32 deg. E. $5^5/_{10}$ varas; thence north fifty-two hundred and fifty varas to corner from which a pin oak marked D. C. bears south 80 east 4 varas, a sweet gum marked X bears south 24 deg. west $3^2/_{10}$ varas; thence east twelve hundred and fifty varas, to corner from which a white oak mkd. D. C. bears south 34 west 3 varas, a pin oak marked X bears north 17 deg. west $3^2/_{10}$ varas; thence south fifty-one hundred varas to the beginning."

It is the contention of the defendants in error, the owners of the Choate, that the southeast corner of the Choate, the beginning corner, is located at a point recently marked by an excavation in the ground with concrete scattered around, which it is claimed is where the old "L. G." tree and the other tree stood on the bank of Pine Island bayou, thereby establishing the east line as running north from this point, and a distance of 1,575 varas east of the west line, instead of 1,250 varas, as stated in the field notes; as to the location of the said west line there being no dispute in this case.

The case was submitted to the jury on special issues, and in answer to the first question propounded to them they have found that the southeast corner and the east line of the Choate grant is located as contended by the defendants in error. By its first assignment of error and proposition thereunder it is contended, in substance, by the plaintiff in error, that the court erred in submitting the issue to the jury, because the evidence is insufficient to support an affirmative finding in response to the question; that there is no evidence sufficient to justify a variation in the distance called for in the original field notes of the David Choate grant, and such distance will control the location of the east line, and fix it 1,250 varas east of the undisputed west line. We have carefully considered the evidence, and conclude that the contention of plaintiff in error is not well founded.

Defendants in error introduced in evidence a copy of the original field notes of the David Choate survey, made by William D. Thompson, district surveyor of Jefferson county, on May 16, 1839, showing that Lefroi Guedry and Sasline Guedry were the chain carriers. The survey starts at a point on the north side of Pine Island bayou, about three miles from its mouth, calling to begin at the southwest corner of a survey made for Lefroi Guedry on said bayou, from which point a pine marked L. G. bears S., 12 deg. W., 2.2 varas distant, and another pine marked X bears S., 81 deg. W., 2.4 varas distant, being the same description as given in the patent; also placed in evidence a certificate from the general land office showing a true and correct copy of part of a map entitled "Map of Jefferson County, O. H. De Lano, County Sur-

veyor," a part of the archives of the land office, showing the location of the L. Guedry survey as adjoining the D. Choate survey on the east, and that the southeast corner of the D. Choate survey and the southwest corner of the L. Guedry survey are at a common corner.

Next was introduced the witness P. G. Omohundro, who testified at considerable length with reference to the corners and lines of the Choate survey, as identified and traced by him as the result of several surveys on the ground of the Choate and parts of the Choate, the first being made by him as early as the year 1898. He also goes into explanations as to the lines and corners of certain old surveys adjoining or contiguous to the Choate, and his testimony as a whole strongly tends to sustain the fact of the location of the southeast corner of the Choate survey, as contended by defendants in error; that is, at a point now marked by a large hole in the ground with concrete scattered about, which it is claimed stands approximately at the point near the "L. G." tree referred to in the field notes of the original survey. Much of the testimony of this witness is given with reference to a large map prepared by him, which map was before the jury, and has been brought up with the record. We will not here attempt to go into detailed explanation or discussion of this testimony, and in fact we do not think a statement could be made intelligible without the incorporation in this opinion of the map referred to, and this we believe is impracticable and unnecessary. Witness Omohundro has been surveying in Texas since 1884, and in the timbered region of East Texas since 1898, and is admitted by all parties to be a competent surveyor. He testified that in 1901 he located the southeast corner of the Choate by running from a point on a line that was pointed out to him by John W. Davis, who also pointed out the southeast corner. He followed an old line to the corner. In 1910 he made another survey of the Choate, and located its southeast corner in identically the same place as in 1901. The bank of the bayou upon which this corner is located has washed away and caved in at the point where the old "L. G." tree and the other tree would be if still standing. In 1901 he had identified the southwest corner of the Choate, there being at that time evidence there of the original bearing trees called for in the Choate survey, but these had disappeared in 1910. In 1901 these trees were down and in a rotten condition. At that time he found the west line running from there to the northwest corner marked all along. The line trees were fairly well marked, and he thought them to be the oldest line trees he found in the county. From the northwest corner he proceeded east on an old line. There were two or three original marks on that line, apparently about the same age

as the marks on the west line. He proceeded 1,576 varas, to a point for the northeast corner of the Choate, which is the point which would be reached by running north from the southeast corner as identified and established by him. From there he proceeded to the southeast corner. He went there because the original line of the Choate carried him there. This east line of the Choate is marked all the way. The old marks are not so numerous. There are very few original marks on account of being in a swamp, and the timber has been blown down in that vicinity. These boundaries were marked by the oldest marks that he found in that vicinity.

The witness George Womack became acquainted with the D. Choate survey in 1856, at which time he moved on it and lived on it for a number of years, and since said time has lived continuously within a short distance of it. With reference to the east line and the southeast corner, we will quote his testimony, as follows:

'I recollect where the southeast corner is. I have known it ever since 1856. I could not tell you what occasion I had to know it so well that I could locate it, but I cut timber all around there for old man Dave Choate, and he always told me not to go over the line. I remember how the southeast corner was marked. I think the Choate corner was on a pine as well as I can remember, marked with an X with two hacks above and below. I saw L. G. marked on a tree. I don't remember the tree that I saw L. G. on. The Choate corner was right there, but it was not on the same tree. They stood right together, one marked L. G. and one just an X, with two hacks above and below, right on the edge of the bayou. These trees stood there a good many years, about 15 years, until they washed in the bayou. They may have stood there a little longer, because after I moved away I did not keep any account of it. I knew those trees until they washed in the bayou. * * * I have acted as chain carrier in running that line. Before the war I surveyed it with Uncle Billie Forbes. We started on the bayou at that corner. We found a plain marked line leading from that southeast corner to the north nearly as plain as when I first saw it in '56, but it seemed to be an old line. I don't remember what year I surveyed it with Mr. Forbes, but it was just before the war. * * * We found the northeast corner; it was marked X, with a hack above and below, as near as I can remember. It was a pin oak. We followed the north line to the northwest corner. That line was marked just like the other marks, hacks and blazes. The marks seemed old, but they were plain then. It seemed that they were 15 or 20 years old, but they were plain on the trees. The marks on those trees appeared to be the same age."

The testimony of this witness is corroborated in many particulars by the witnesses Joe Bumpstead, Sam Tevis, and T. R. Pickle. It is shown that on the south part of the Choate survey and on the bank of Pine

Island bayou there was located and platted by Choate the old town of Concord, which in its time seems to have been a· place of considerable importance. It would seem that the town first sprung up a short time prior to the Civil War, and continued in existence for some 10 or 15 years. It was located at the head of navigation on the Pine Island bayou, and just a short distance above the southeast corner of the Choate survey. A public road has for years run right by this corner. The southeast corner of the Choate is shown to have been a prominent well-known corner for many years, and all the witnesses testified to a general reputation in the vicinity, extending back to the earliest times, that the Choate southeast corner was located where now contended by defendants in error.

The Houston Oil Company, plaintiff in error, did not offer any evidence to contradict the above evidence, and we cannot see that the evidence is discredited in any way. One or two circumstances relied upon in the argument will be mentioned. Plaintiff. in error introduced the field notes of a certain survey designated "Corrected Field Notes of the James Tyner Survey," made August 5, 1909, by Carter Hart, county surveyor of Hardin county. The west line of this survey is located 1,250 varas east of the west line of the Choate, and corners on the bayou; it being contended by plaintiff in error that the west line of this survey and its southwest corner is the true southeast corner and east line of the Choate. In these "corrected field notes," at the call for the purported southeast corner of the Choate, it is said "the bearing trees described in the Choate field notes are down," and in the calls for a certain tree on the purported east line of the Choate it is said, "From the age of marking I would judge to be the original mark for the Choate." This is the only evidence of any marked corner or marked east line of the Choate at the point 1,250 varas east of its west line, being the east line and corner contended for by plaintiff in error. The surveyor who made this resurvey in 1909 did not testify as a witness. Whatever may be said with reference to this resurvey made in 1909, we think that the force of the recitations there made is much weakened, if not entirely rebutted and destroyed, by the recitations in the field notes of the original survey made for James Tyner by William Word, county surveyor of Hardin district, dated 8th day of ——, 1861. In this original survey it is stated, when describing the southwest corner of the Tyner at this alleged southeast corner of the Choate, that "corner of Choate's survey not found on the ground," and in calling for the west line of Tyner, that "the east line of David Choate's survey line not found." As Word, the surveyor, did not find in 1861, 22 years after the original survey of the Choate, any marked line or corner at this point, it is a justifiable assumption that such marks as were found by Surveyor Hart in 1909 were made at a later time. It seems that Tyner lived for a short time on his proposed survey, which, as shown, encroached on the Choate, but was run off by Dave Choate, and the survey abandoned and never patented, and no other person has ever questioned the location of the east line of the Choate survey until this suit was filed.

It is said, if the southeast corner of the Choate be located as found by the jury, that all the meander calls for the bayou along the south boundary line will not fit. This is true; but it is shown that in these old surveys it frequently happens that the meander calls will not follow or fit the banks of the streams called for, that the surveyors often made the calls for the purpose of determining acreage, and not with the idea of following exactly the course of the stream. But these meander calls for the south line of the Choate will not fit or follow the bayou if we place the southeast corner as plaintiff in error would have it. This very potent fact appears, though, that, taking the southeast corner as located by the jury, the first and second meander calls, "North 25 west 332 varas, north 58 deg. west 170 varas," fit the bayou exactly, and this is the only point along there that they will fit. This tends to fix this corner by a natural permanent object. If we place the commencing corner as contended for by plaintiff in error, the first and second meander calls will lead almost straight away from the bayou. These other facts may well be mentioned: The east line as here established is shorter by 467 varas than the distance called for in the field notes, but, if we place the east line at 1,250 varas from the west line, it would be 967 varas shorter than the distance called for in the field notes. The Choate grant calls for 1,107 acres, and with the east line as here established there is an excess in the grant of 126 acres. If we run the east line as claimed by plaintiff in error, the grant will contain only 980 acres, making a shortage of 127 acres.

[2] We have really gone further into this matter than required by plaintiff in error's assignment of error. The assignment of error and proposition thereunder, which we mentioned at the outset, presents the contention that the court erred in submitting the question as to the location of the southeast corner and east line of the Choate survey to the jury; in other words, that the evidence is insufficient to raise an issue as to the correct location. A reading of the statement under plaintiff in error's assignment and proposition makes it immediately apparent that there was evidence which tended, even taking the most unfavorable view of, it, to prove the location of the corner and line to be as found by the verdict of the jury. No motion was made to set aside the findings of the jury as contrary to, or unsupported by,

the evidence, or at least no assignment is presented here predicated on any action of the court in that connection. In this state of the record we are not required to go into an extensive examination and analysis of the evidence, but could properly dispose of the assignment with a mere statement that there was evidence on the point. Texas & P. Ry. Co. v. Corn, 110 S. W. 485; Blackwell v. Vaughn, 176 S. W. 912; Petty v. San Antonio, 181 S. W. 224. However, in this instance, we have not contented ourselves with taking that course, but have gone fully into the facts; and find not only that there was evidence on the question, but we believe that the verdict of the jury is amply sustained by the evidence, and that any other finding as to the location of the lines of the survey would not have been warranted.

[3] We recognize the rule, as applicable to questions of location of surveys and lines and boundaries generally, that when the objects, natural or artificial, called for by the field notes, cannot be found on the ground or their previous location accounted for, then that course and distance will be followed. This would seem to be a rule of unavoidable necessity; for if you cannot find the objects called for in the field notes, nor ascertain where they were previously located, what guide would be left to follow other than the calls for course and distance? The cases of Maddox v. Dayton Lbr. Co., 188 S. W. 958, Tippen v. McCampbell, 26 S. W. 647, and Keystone Mills Co. v. Peach River Lumber Co., 96 S. W. 64, cited by plaintiff in error, are instances in which this rule has been resorted to and applied.

[4] But the location of land and land lines is a question of evidence, and caution must be exercised in undertaking to apply any definite and fixed rules to a particular case. Probably the most elemental rule is that first importance is to be given to calls for objects on the ground; and if such objects can be identified, or if they have been destroyed or have disappeared, but their previous location can be shown, then the lines will be run accordingly. The mere fact that the primitive landmarks have disappeared does not authorize the limiting of the lines and confining of the boundaries by calls for distance in the field notes. In this case we have evidence, about as certain and satisfactory as could reasonably be expected under the circumstances, establishing the previous location of the old bearing trees at the corners of the survey, and the old marked lines extending around it, and there is no authority for limiting the lines and adjusting the corners by the calls for distance. Bolton v. Lann, 16 Tex. 96, 114; Stafford v. King, 30 Tex. 257, 277, 94 Am. Dec. 304; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317.

The east line of the Choate being established, and the width of the survey and the extent of the lands within its boundaries being thereby determined, it remains to consider the questions presented with reference to the title to the different portions of this land. In its second assignment of error plaintiff in error complains of the refusal of the trial court to give to the jury a peremptory instruction to find in its favor for all land which lies upon the A. W. Smith league. The proposition is that the evidence wholly failed to show the possession by interveners, defendants in error, or those under whom they claimed, of any portion of that part of the Choate survey which is in conflict with the A. W. Smith survey. The whole contention of the plaintiff in error in this connection seems to be based upon the idea that the east line of the Choate will be located as contended by it, and that then, since such possession and use as was shown on this part of the land was east of this line, there was therefore no occupancy of any part of the Choate in conflict with the Smith. It is conceded in the statement and argument that there was possession of that part of the land in conflict with the Smith league, if the lines of the Choate be recognized and established as found by the verdict of the jury in this case. The testimony shows very clearly that one Foss Jones, as a tenant of Mrs. Polly Choate, then the owner of the Choate survey, resided from the year 1870 to 1876, and possibly longer, on what is known as Bull Nettle Ridge which is located on the conflict between the Smith and Choate some 200 or 300 yards west of the east line of the Choate, as here determined. We will not go into an extended statement and analysis of the testimony. The court submitted the issue as to title under the three years' statute of limitation by reason of the tenancy and occupancy of Foss Jones of that part of the David Choate survey in conflict with the Smith, and also by another question submitted, the issue of limitation of three years of Mrs. Choate through John W. Davis as agent or tenant, and the issue of ten years' limitation title by Mrs. Choate, or those holding under her. The jury found for the defendants in error on each of these issues submitted. No assignment of error questions the sufficiency of the evidence to support the jury's findings.

The next contention under this assignment is that an outstanding title was shown to that part of the Choate survey in conflict with the Smith and a small portion of that in conflict with the Davidson. It appears that this part of the Choate was levied upon under a judgment rendered in the district court of Hardin county, in favor of H. M. McClenny and others against David Choate, and thereafter sold under such execution, but neither the date of the levy or the sale is shown. The date of the sheriff's deed is June 3, 1873. Prior to this time, and by

deed dated May 13, 1871, David Choate had conveyed all of the Choate survey except a certain 200 acres in the south portion thereof to Charles W. Winn. By deed dated July 28, 1871, Charles W. Winn transfers and conveys all of the land previously conveyed to him by David Choate to Mary Choate, for a recited consideration of $133; but there is no recitation in the deed that the consideration was paid out of the separate funds of Mrs. Choate, or that the said property was conveyed to her for her separate use and benefit. It is shown by parol evidence that, at the time of the conveyance and transfer by David Choate to Charles W. Winn, it was understood that the property was to be reconveyed by Winn to Mrs. Choate, and that the declared purpose of the transaction at the time was to vest the land in question in Mrs. Choate as her separate property. It is not shown that any possession was ever taken under this McClenny title, or that any claim or right thereunder was ever asserted; in fact, nothing is shown with reference to it after the sheriff's deed of 1873.

[5] The general rule is that, where a defendant relies on an outstanding title in some third person in order to defeat a recovery by the plaintiff, it is necessary for such defendant to show that such outstanding title is a valid one. The outstanding title, to be available as a defense, must be shown to be the superior title. The mere fact that some kind of an outstanding title appears is not a good defense. Styles v. Gray, 10 Tex. 503; Holland v. Ferris, 107 S. W. 102.

[6, 7] Do the facts above shown establish a valid outstanding title in third persons? It is true that property conveyed to the wife, without any recitation showing it to be her separate property, is presumed to be a part of the community. The fact alone that the deed is taken in her name does not give notice of a separate right, and purchasers of such property from the husband for a valuable consideration, without notice, acquire a good title, and are protected against secret equities and claims to the property on the part of the wife. In such instances the presumption becomes conclusive, and cannot be affected by parol evidence showing the property to be the separate property of the wife. But as between the husband and wife or their representatives, and as against all persons not in the position of purchasers for value without notice, the real facts of the matter may be shown, and parol as well as other evidence is admissible. Wallace v. Campbell, 54 Tex. 87; McClintic v. Midland Grocery & Dry Goods Co., 106 Tex. 32, 154 S. W. 1157; Love v. Robertson, 7 Tex. 6, 56 Am. Dec. 41; Speers, Law of Marital Rights (2d Ed.) §§ 306, 309.

There is nothing shown here which supports the idea that McClenny and the others were innocent purchasers without notice of Mrs. Choate's title as her separate property, and the undisputed evidence showing that it became in fact her separate property in July, 1871, standing in her name then and afterwards, it cannot be considered that a superior outstanding title to the land is shown in the purchasers under the execution against David Choate.

There remains to be considered the questions with reference to the land covered by the conflict between the Choate and the Davidson surveys. The jury has found in response to question No. 4 that Mrs. Mary or Polly Choate, through Beauregard, as tenant, and in response to question No. 5, that Mrs. Choate, through T. R. Pickle, as tenant, has occupied, used, and enjoyed, in peaceable and adverse possession, under title or color of title, a part of the land in the conflict between the David Choate and Uriah Davidson surveys, for a continuous period of full three years before the institution of this suit; and in response to question No. 12, that David Choate and those holding under him used, cultivated, and enjoyed a part of the land in conflict between the Choate and Davidson surveys, holding the same in peaceable and adverse possession ten full years before the bringing of this suit. In response to question No. 3, that David Choate had under fence, using, cultivating, and enjoying the same, in peaceable and adverse possession, under title or color of title, a portion of the land on the conflict between the Choate and Davidson, on or near the west boundary line of the Choate, continuously for a period of three full years prior to January 28, 1861.

Plaintiff in error complains, in its assignment with reference to these questions, of the refusal of the court to give a peremptory instruction in its favor for this land, and complains of the court overruling its objections to the submission of questions Nos. 3 and 12 above, on the ground that there is no evidence to justify an affirmative finding thereon. The propositions are that the Uriah Davidson league was the separate property of Mrs. Susan Moore, a married woman, from December 8, 1860, to August, 1881, and limitation would not run against her during that period; and, further, that no possession on the conflict was shown after August 4, 1881, except possession of a small portion lying within the boundaries of a 200-acre tract described and set aside to Mrs. Choate in a decree of the district court of Jefferson county, in the case of David and Mary Choate, Interveners, v. Cave Johnson et al., dated November 28, 1871.

An examination of the facts shows that there was an abundance of evidence of possession of parts of the Choate in conflict with the Davidson, by David Choate, Mary Choate, and tenants under them, commencing

as early as 1856, and extending on down. The jury has found, in response to question No. 12, that David Choate, or those holding under him, was in adverse possession, etc., for a period of 10 full years before the filing of this suit, and no error is assigned to the submission of the issue, or to the sufficiency of the evidence to support the finding. The evidence does not show clearly in each instance the exact locus of the possession of the different persons on the conflict, and we are unable to tell in every instance whether it was within or without the 200 acres set aside to Mrs. Choate. There is no assignment of error attacking the findings of the jury as unsupported by the evidence, or based on a refusal of the court to set them aside. The assignments and propositions of plaintiff in error do not meet the issues.

[8] The undisputed evidence is that, in the year 1856, David Choate had a farm in cultivation located on the conflict between the Choate and the Davidson, and that the field had been cultivated the year before. This farm, or parts of it, was cultivated continuously up to the year 1874. The land was conveyed to Mrs. Susan J. Moore by deed dated July, 1856. It was not shown to be vested in her as separate property until December, 1860, and Choate's three years' limitation title was complete before that time. But anyway, limitation began to run before Mrs. Moore acquired title, and, having begun to run, would continue to run, notwithstanding the disability arising subsequently by reason of the title being vested in her as her separate property. White v. Latimer, 12 Tex. 62; McDonald v. Hovey, 110 U. S. 619, 4 Sup. Ct. 142, 28 L. Ed. 269; Rev. Stat. art. 5711.

The Davidson league was conveyed by Mrs. Moore to John P. Irvine by deed dated October 4, 1881. The evidence is clear that Mrs. Choate, through the negro man Beauregard as tenant, was in possession of part of the land in the conflict from August, 1881, until 1890 or 1891. He had a house and small farm on the land, and this was north of and outside the 200-acre tract set aside to Mrs. Choate by the court decree in 1871. This renders it unnecessary for us to go into and decide the question presented and discussed by counsel as to whether or not possession within the 200-acre tract shall be held and construed to extend only to its boundaries; that is, whether or not the segregation principle, as declared by the Supreme Court in Turner v. Moore, 81 Tex. 206, 16 S. W. 929, and Allen v. Boggess, 94 Tex. 83, 58 S. W. 833, is applicable here. Nor is it necessary to decide the question whether or not the little graveyard established on this land in 1859, kept up since that time, and in which David Choate and his wife

are buried, constitutes such occupancy and use as would support the title by limitation.

From what has been said above, it follows that it is our opinion that the motion for rehearing should be granted, that the former order should be set aside, and the judgment here appealed from should be affirmed. It therefore will be ordered accordingly.

HIGHTOWER, C. J., not sitting.