**SOUTHWESTERN SETTLEMENT & DE-
VELOPMENT CO. et al. v. STAN-
BURG et ux. (No. 892.)**

(Court of Civil Appeals of Texas. Beaumont.
Feb. 10, 1923.)

**1. Boundaries ☞3(3)—Natural objects con-
trol when discoverable.**

Natural and artificial objects called for in
the field notes of a survey are of controlling
importance in locating the boundaries; but
where such objects cannot be found, nor their
previous location accounted for, the survey
should be located by the call for courses and
distances.

**2. Boundaries ☞3(5)—Courses and distances
ordinarily control over distances from corners
to creeks or roads.**

Distances called for from corners to creeks
or roads, unless specially designated in such
manner as to show the intention to make them
locative, are not such, and will not ordinarily
have precedence over a call for courses and
distances.

**3. Boundaries ☞37(3)—Evidence held insuf-
ficient to sustain verdict in boundary line
suit.**

In a boundary line suit, where the natural
and artificial objects called for in the original
field notes could not be found on the location
of the boundary line as contended for by de-
fendants, evidence in behalf of defendants that
their surveyor located the fourth corner and
defendant's line by a passing call from the fifth
corner of the survey to the branch or creek not
shown to be intended as locative evidence
*held* insufficient to sustain a verdict for defend-
ant.

Appeal from District Court, Sabine Coun-
ty; V. H. Stark, Judge.

Trespass to try title by the Southwestern
Settlement & Development Company and
others against Charley Stanburg and wife.
Judgment for defendants, and plaintiffs ap-
peal. Reversed and remanded.

Kennerly, Lee & Hill, of Houston, and
Hamilton & Hamilton, of Hemphill, for ap-
pellants.

Jas. G. Barker and E. P. Padgett, both
of Hemphill, for appellees.

WALKER, J. This was a boundary line
suit instituted by appellants against appellees
in the form of trespass to try title, and in
which appellees answered by a plea of not
guilty.

The question involved was the true loca-
tion on the ground of the south boundary line
of Texas & New Orleans section 12, in Sabine
county, Tex. Appellees contend that this line
is located 222 varas north of the north line
of the Jacks survey, and on this theory they
purchased from the state, as vacant land,
the strip lying between the north boundary
line of the Jacks and the south boundary line
of section No. 12, referred to in this record
as the Charley Stanburg claim. Appellants
contend that the south boundary line of sec-
tion 12 is practically coincident with the
north boundary line of the Jacks, and that
the south boundary line of what appellees
contend was vacant land is, in fact, the south
boundary line of section 12. On this theory
the land in controversy—23.7 acres—is a
part of section 12, and belongs to appellants.

Appellants have made a very extended
statement from the evidence. Appellees have
filed a short brief, but make no statement
whatever. Therefore the statement made by
us is taken from appellants' brief.

The field notes of section 12 are as follows:

"Survey No. 12.

"The State of Texas, County of Sabine.

"Field notes and plat of a survey of 640 a.
of land made for the Texas & New Orleans
Railroad Company by virtue of land scrip No.
820 issued to said company by Wm. S. Hotch-
kiss, commissioner of claims, at Austin, Texas,
February 13, A. D. 1861.

"Said survey is situated upon the waters of
Tebo & Housen Bayou beginning at the south-
east corner of survey No. 11, at a stake from
which a pine 8 in. dia. bears north 5 vrs. and
pine N. 40 deg. E. 4 vrs.

"Thence S. 9 deg. W. 980 vs. to branch
1 vrs. bears S. E. 990 vs. to black gum 10 in.
line tree 1,480 vrs. intersected the north bound-
ary line of John Clark's league for second cor-
ner a stake from which a red oak bears N. 79
deg. E. 2 varas dist. and a post oak N. 75 deg.
E. 3 vrs. dist.

"Thence with John Clark's north boundary
S. 85 deg. W. 400 vs. to an old corner of
Robert Roundtree's survey—1,600 vs. to the
northwest corner of John Clark's league stake
and mound, from which a pine 20 in. dia. bears
S. 83 deg. E. 3 vrs. and a sweet gum 10 in.
bears S. 25 deg. W. 4.6 vrs. dist.

"Thence with John Clark's western line S. 5
E. 810 vs. to fourth corner a stake, from which
a pine 12 in. in diameter bears N. 13 deg. E.
3 vs. and a pine 10 in. dia. south 6 vs.

"Thence north 81 deg. west 546.5 vs. to fifth
corner on the east boundary of survey No.
—— a stake from which a pine bears S. 85 deg.
E. 5 vs. and a pine S. 22 deg. W. 8 vs.

"Thence N. 9 deg. E. 257 vs. to branch 1
vara bears 487 vs. to old road, 1017 vs. branch
1 vrs. wide, bears east, 1027 vs. pine 10 in
line tree, 1,631 vrs. to the southeast corner
of survey No. 9; thence along the east bound-
ary line of survey No. 9 1,021 vrs. intersected
the southwest corner of survey No. 12. (total
length of this line being 2,652 to fifth corner)
a pine 6 in. bears marked X from which a pine
bears N. 10 deg. E. 3 vrs. distant 4 vs.

"Thence S. 81 deg. E. along the east bound-
ary of survey No. 11, 1,900 vs. to the place of
beginning.

"Bearing trees all marked X.

"Surveyed October 21, A. D. 1873."

All parties agree as to the location on the ground of the first, second, and third corners called for in the field notes.

Appellants offered two witnesses, competent surveyors, who testified that the fourth corner in the field notes was found by them on the west line of the John Clark, as called for, at a point 802 varas south 5° east from the third corner of the field notes, which corner is also the northwest corner of the John Clark. The bearing trees called for were not found, but they found stumps, which they identified as being the stumps of the old bearing trees on the course and distance called for. They ran the south boundary line from that point north 82° west, instead of north 81° west, as called for in the field notes, and found an old marked line. On this line was an old bearing tree, which another witness of appellants had known and recognized as a boundary tree on this line for more than 40 years. At the intersection of the line run by appellants' surveyors with the east line of section 10, they found a corner of long standing, but did not find the bearing trees called for in the field notes.

One of the original chain bearers testified for appellants, and located the south boundary line of section 12 and its fourth and fifth corners in accordance with appellants' contention.

The official maps of Sabine county have shown a vacancy between the south boundary line of section 12 and the north boundary line of the Jacks, but the north boundary line of the Jacks calls to run with an old line—now identified as the south boundary line of section 10—to "an old corner," now identified as the southeast corner of section 10; "thence S. 9 deg. W. 55 vrs. to stake for corner; thence S. 81 deg. E. 594 vrs. intersected the west line of the John Clark league." If this call were correct, there would be a vacancy between the Jacks and section 12, even when that section is located according to the contention of appellants. In platting the Jacks, the land office located it in accordance with the call as just given, but, on the record as now before us, it appears that the parties to this appeal recognize that this call should read "north 9 deg. east, 55 varas," and thence on the proper call to the west line of the Clark. If the north line of the Jacks is thus located, it is practically coincident with the south line of section 12 when located according to appellants' contentions.

The official map of Sabine county, made subsequent to the patenting of the supposed vacancy to appellees, locates the Charley Stanburg claim as shown by the old maps, thus placing it on the map almost entirely south of the location made by Stanburg on the ground.

The surveyor who made the field notes to section 12 attached to his report a plat of the section showing the location of the south boundary line as now contended for by appellants. Section 12 is short in area, even when the south line is located according to appellants', contentions. Appellees' contentions would further reduce its area. Appellants locate the southeast corner at a distance of 802 varas from the third corner. Appellees locate that corner at a distance of 573 varas from the third corner. From its field notes the line should be 810 varas. As appellants locate the fifth or southwest corner, the west line is short about 58 varas. On appellees' location it would be short about 280 varas. The original field notes call for the west line to cross only two branches. On appellants' contention this line now crosses five branches, and on appellees' contention it crosses four branches.

We believe the following statement reflects all the facts and circumstances relied on by appellees to sustain their contention. Beginning at the southwest corner of section 12, that is, its fifth corner, its west line calls to run north 9° east, 257 varas to a branch. No evidence was offered to identify any one of the many branches on the west line with this passing call, but the county surveyor found a branch on the west line which he assumed to be the branch called for by the original surveyor, and from there surveyed south 9° west 257 varas, and located the southwest corner of section 12. Then he ran on the calls for course, as made in the original field notes, to the west line of the John Clark, thus establishing the southwest corner of section 12, its south boundary line, and its southeast corner. At neither corner did he find any of the bearing trees called for in the original field notes, nor did he find any evidence of any old line where he located the south boundary line. At the southwest corner he found an old pine knot, but the evidence was clear that it was placed there in 1917, and had no relation to anything called for in the original field notes. There was no indication of marked corner corresponding to the fourth corner of the original field notes at any place on the east line of section 12, north of the location made by appellants. The county surveyor, in locating the vacancy, did not survey all of section 12, nor did he survey any of its surrounding surveys. In fact, as we understand his testimony, the work in locating the vacancy must rest absolutely and entirely on his assumption that the branch at which he began his work was the branch called for in the original field notes. He did not even survey the west line to verify this passing call in connection with the other passing calls on that line, but, to make clear what he did, we quote from his testimony as follows:

"As to whether or not the only thing I had to determine a vacancy down there from was I found a little branch, and I measured off

257 varas from that branch, and just marked off a vacancy in there containing 23 acres, will say I had the field notes from the land office calling for the branch 257 varas north 9 east from that corner. * * * If I had gone all around section 12, and everything else fit except that call for that branch, it would have been natural for me to reject that one call and establish that survey as called for by Hankla. That is the thing I would have done. I would take the most reliable calls and reject those that are less certain. If they had asked me to run out all of T. & N. O. section 12, it is possible that I might have arrived at a different result. * * *"

"If it had not been for that little branch out there that I thought Hankla called for, I would have had to survey out the whole of section 12. * * *"

"In locating the northwest corner of the Stanburg claim, I started 257 varas from a branch. If I have the correct branch that is called for by Mr. Hankla, that branch ought to be 1,017 varas from the next branch, according to the field notes of T. & N. O. section 12. I don't know whether it is in fact 1,017 varas from the branch that I located to the next branch going north or not. According to this plat, there are four or five branches on the west boundary line of T. & N. O. section 12. There is no branch just 70 varas north of the branch I located. There is a branch 257 varas north 9° east from the northwest corner of the Stanburg survey, and that is the only branch between that point and the N. M. Jacks corner. If there is another branch just above that branch I never saw it. As to whether there is a branch just a short distance, about 70 varas north of the branch I located, will say, the first branch is the one I was instructed to go to, and I went south 9° west 257 varas, and I was at the southwest corner of 12. I know that was the branch called for, because it was the only branch north of that corner. * * * I never made a complete survey of T. & N. O. section 12. I stated that I found a black gum and sweet gum at the southeast corner of section 10. I did not have the field notes of section 10 with me. I don't know whether those are the ones called for in the field notes of section 10 or not, except by the map. The map does not give the bearings; I just took the bearings of that line—the cutting—and it was the south line of 10. I did not survey it out."

A map of section 12 and its surrounding surveys was offered in evidence, showing section 11 on the north, the John Clark on the south and east, the Jacks on the south, and sections 10 and 9 on the west. On this map was also shown the supposed vacancy marked "Stanburg claim." The south boundary line of this claim was marked "EI," being the south boundary line also of section 12 as contended for by appellants. The north boundary line was marked "FH."

The case was submitted to the jury on the following special issue:

"Did the surveyor, Hankla, when he made the corrected field notes of section 12, T. & N. O. Railway survey in 1873, locate the same upon the ground at the point represented by the line "EI" on the map offered in evidence, same being the location of same as claimed by plaintiffs, or did he locate it at the line located by the line "FH," same being the location of same as claimed by defendants? You will answer this question by filling in the blank in the form submitted to you for the verdict the words 'As claimed by plaintiffs,' or the words 'As claimed by defendants,' as you may determine."

Their answer was as follows:

"As claimed by the defendants."

### Opinion.

[1] It is the well-established rule in this state that generally the natural and artificial objects called for in the field notes of a survey are of controlling importance in locating it on the ground; but, when such objects cannot be found, nor their previous location accounted for, the survey should be located by the calls for course and distance. Houston Oil Co. v. Choate (Tex. Civ. App.) 215 S. W. 122; Jones v. Andrews, 72 Tex. 18, 9 S. W. 170. In this case the natural and artificial objects called for in the original field notes to section 12 at the fourth and fifth corners were not found on the location of the south boundary line, as contended for by appellees. Nor was anything found north of the location contended for by appellants, corresponding to nor explaining such calls. The county surveyor, in locating the fifth corner of section 12, thereby locating the south boundary line, and also its fourth corner, was controlled altogether by the passing call on the fifth line for the branch one vara wide, north 9° east 257 varas from the fifth corner. The call for this branch was in no sense locative, and, as we construe the calls of the field notes, was merely an incidental call. According to the testimony of the county surveyor himself, it does not appear that the branch selected by him was located by the other passing calls on the west line, nor by the call for the northwest corner, which was well known. He made no effort to identify the passing call for the branch by checking it with the other calls. As we understand the rules for construing field notes, at least on the showing made in this record, the call for the branch should be given but little, if any, probative force, and is secondary in importance to the call for course and distance.

[2] As said by our Supreme Court in Jones v. Andrews, supra:

"Distances called for between corners to creeks or roads, unless specially designated in such manner as to show the intention to make them locative, are not such, and will not ordinarily have precedence over a call for course and distance."

Therefore it follows, on the showing made by appellees in support of their contention,

that course and distance from the third corner of the original field notes should prevail in locating the fourth and fifth corners and the south boundary line over the passing or incidental call for the branch on the west line.

Now, when we look to the evidence offered by appellants in support of their contention, it is all but conclusive that they have sustained their location. Two competent surveyors testified to finding evidence of the old bearing trees at the fourth corner. An old line was found identified by the old citizens as being the south boundary line. One of the original chain bearers sustained appellants' contention. On the call for course and distance the east line, as run by appellants, was only 8 varas short, while the west line, in a distance of 2,652 varas, was only about 58 varas short.

[3] In our judgment, appellants' assignment that the verdict of the jury is without support in the evidence should be sustained; but, if we give due probative force to all the facts and circumstances offered by appellees, the overwhelming weight and preponderance of the evidence against appellees' contention is so strong that the verdict of the jury must be held to be clearly wrong. We do not render judgment here for appellants, but, if on another trial the evidence is, in effect, as it is on this appeal, the trial court should instruct a verdict for them.

Reversed and remanded.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes