**Burton BARNES et al., Appellants,**

v.

**R. M. WINGATE et al., Appellees.**

No. 6329.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 29, 1960.

A. M. Huffman, Beaumont, for appellant.

Cain & Cain, Liberty, for appellee.

McNEILL, Justice.

This action was instituted by Burton Barnes, George E. Clark, C. R. Eisler, M. V. Harlow, R. C. Faulkner, Frank Leverett, T. A. Mangelsdorf, F. A. Rosen and wife, Marian Rosen, E. L. Schlein, William Blieden, Hyman Blieden, Samuel B. Sharfstein and H. M. Rosen, plaintiffs, against defendants R. M. Wingate, Mrs. C. W. Burrell, a feme sole, Mrs. Elvira Wingate, a feme sole, Mrs. Gertrude Alton and husband, Ray Alton, Mrs. Florence Callahan and husband, Earl Callahan, W. M. Wingate, Doyle Wingate, Mrs. Estelle Chesson and husband, Robert Chesson, Hal E. Win-

gate, Loye Kemp, Mrs. Elsie Wittman and husband, W. E. Wittman, Mrs. Maggie Wingate, a feme sole, Mrs. Maggie Wingate, surviving wife of Zede Wingate, deceased, now a feme sole, Stone Wingate, and Mrs. Ima Thornton, a feme sole, upon the usual allegations of trespass to try title. Defendants answered by plea of not guilty and of limitation under the various statutes of limitation affecting the title to land. While in the form of trespass to try title, the suit was actually one involving location of the North boundary of the William McFaddin Survey situated on the South fork of Taylor's Bayou in Jefferson County and thereby brought in question the ownership of a rectangular tract of 60 acres 1344 varas long East and West and 252 varas wide, described in plaintiffs' amended petition. The parties stipulated that the plaintiffs were the record owners of the title to the McFaddin Survey and that defendants were the record owners of the Crawford C. Burnett Survey lying immediately North.

Two issues of boundary were submitted to the jury. Special Issue No. 1 inquired whether the line contended for by plaintiffs was the North boundary line of the McFaddin. This issue and the answer of the jury thereto were as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence, that the North boundary line of the William McFaddin Survey was located by William Armstrong at the location appearing on Plaintiffs' Exhibit No. 2 from the point _K_ to the point _N_?

"Answer 'Yes' or 'No'.

"Answer: No"

"Special Issue No. 2 submitted the position of the line as contended for by defendants and it and the answer of the jury thereto were as follows:

"Special Issue No. 2

"Do you find from a preponderance of the evidence, that the North bound-

ary line of the William McFaddin Survey was located by William Armstrong at the location appearing on Defendants' Exhibit No. _8_ from the point _E_ to the point _F_?

"Answer 'Yes' or 'No'.

"Answer: Yes

"Answer: _____"

The court also submitted Special Issue No. 5 inquiring whether a former owner under defendants had and held peaceable and adverse possession of the 60 acres involved for a continuous period of ten consecutive years, which the jury answered in the affirmative. Motion was filed by defendants praying judgment on the verdict and plaintiffs filed motion non obstante veredicto, contending that they had established the boundary of the McFaddin Survey as described in Special Issue No. 1 as a matter of law; that the jury's answers to Issues 1, 2, and 5 were against the great weight and preponderance of the evidence. Upon hearing the motions, the trial court sustained that part of plaintiffs' motion attacking the finding of the jury on the 5th issue on limitation, but overruled it as to the findings of the jury in answer to Issues Nos. 1 and 2, and upon the finding of the jury in answer to Special Issue No. 2 granted defendants judgment establishing the North line of the McFaddin Survey as contended for by defendants, upon the line described in said issue. This line runs East and West through the 60-acre tract from its West line at a point 210 varas South of the Northwest corner to a point on its East line 198 varas South of the Northeast corner. After defining said line as being the North line of the McFaddin, the court granted judgment for that part of the 60-acre tract lying North of said line to defendants and that portion of the tract lying South of the line to the plaintiffs. Plaintiffs have appealed from this judgment, and the parties here will be described as they were in the trial court.

In order to understand more clearly the conflicting contentions of the parties, we have attached hereto a sketch which we have made of the area. It shows the 60-

acre tract involved as "K", "N", "X" and "Y", plaintiffs claiming the North line of the McFaddin is the line "K-N", defendants claiming it to be the line "E-F". This sketch reflects the relative positions to each other of the William H. Smith League, the George Elliot, William Reeves and William McFaddin Surveys. All four surveys were made by the same surveyor, William Armstrong. The William H. Smith League was surveyed February 2, 1845; the Elliot and Reeves May 12, 1845, and the McFaddin May 14, 1845. The beginning call for the Elliot is on the League's East line 100 varas North of its Southeast corner, thence running East; the beginning call of the Reeves is at the Southeast corner of the Elliot, thence running East; the beginning call of the McFaddin is at the Northeast corner of the Reeves, thence running East. As shown by the sketch, the South fork of the bayou intersects the East line of the

Smith, the common line of the Elliot-Reeves, the common line of the Reeves-McFaddin and the East line of the McFaddin. The sketch also indicates the present line of Mayhaw Bayou which is a canal emptying into the South fork of Taylor's Bayou East of the Smith League, and South of the Elliot South line as placed by plaintiffs. The field notes of the Smith, Elliot and Reeves Surveys made by Armstrong in 1845 each attached a sketch of the survey made, which clearly reflected that Mayhaw Bayou then ran Northeasterly and emptied into Taylor's *West* of the East line of the Smith League and crossed the South line of the Smith only once. Each of the three surveys built on the Smith League were called to contain 320 acres, the first two being in the shape of a square, the sides of which are 1344 varas each, and the McFadden having call of 1344 varas for its North line.

Although there was some testimony upon the question of limitation, the controversy centered upon the location of the North boundary of the McFaddin Survey. Two surveyors testified: W. G. Hugly for the plaintiffs and Carl Kohler for the defendants. They recognize and agree that the Northeast corner of the William H. Smith League as located by Armstrong in 1845, and as found by J. A. Greene, State Surveyor in 1889, is marked by a gun barrel in Leo Craigen's yard and is represented at "D" on the sketch. They also agree on the location of the East line of the league from the Northeast corner to its intersection with the South fork of Taylor's Bayou. There is also substantial agreement as to the distance between the Smith League East line and the McFaddin East line.

Plaintiffs contend that since the nearest well established point of the Smith League is its Northeast corner, the North line of the William McFaddin should be established by surveying along the East line of the league south from its Northeast corner the distance of 5,000 varas as called for in its original field notes; that this point represented on the sketch as point "A", should be taken as the Southeast corner of the league and the lines of the Elliot, Reeves and McFaddin located therefrom; that since all natural and artificial objects called for in the original field notes of each of the four surveys, except bayou passing calls and the bayou call for the upper Southeast corner of the McFaddin are gone and unaccounted for, the calls in the original field notes of the Elliot, Reeves and McFaddin for course and distance, including the call from the Northeast corner of the league of 5,000 varas along its East line, will control. They cite in support of this proposition Strayhorn v. Jones, 157 Tex. 136, 300 S.W.2d 623; Southwestern Settlement & Development Co. v. Stanburg, Tex.Civ.App., 248 S.W. 108; Taylor v. Higgins Oil & Fuel Co., Tex.Civ. App., 2 S.W.2d 288.

Defendants contend that the southeast corner of the Smith League is at point "H" on the sketch, 171 varas South of point "A". They assert that the corner represented by point "H" is recognized as an old and accepted corner by persons living in that vicinity; that both surveyors, Hugly and Kohler, acknowledged the boundaries of the Smith League were excessive in length, and the report of the state surveyor, J. A. Greene, of the surveying made by him in 1889–90 found the Smith League lines to be in excess of its calls, locating the Southeast corner at point "H" 5,171 varas from its Northeast corner; and placing the Southeast corner of the league at 5,171 varas from its Northeast corner, the distance corresponding with that found by Greene and recognized as the Southeast corner, and running out the Elliot, Reeves and McFaddin Surveys from this point not only coincides with the location of the Southeast corner by Greene but fits the North line of the three 320-acre surveys as found and re-established by Surveyor L. J. Kopke in 1931, who then also located the southeast corner of the league at point "H"; that said Kopke line was a well established, marked old line and was the one

upon which the Burrell Heirs in 1931 partitioned their property lying North and South of said line, and that an old fence line, which had been maintained a number of years ran along just South of the Kopke line. In addition, the Southeast corner of the league, placed at point "H" is supported by the field notes of James Ingalls, County Surveyor, when he surveyed and located the junior adjoining surveys, T. & N. O. R. R. No. 141 and T. & N. O. R. R. No. 197–B in 1871, and by Greene when he re-surveyed T. & N. O. R. R. 141 in 1899–90; the North lines of the Elliot, Reeves and McFaddin were re-established in 1871 when McCally surveyed the Burnett Survey adjoining these surveys on the North and when Doucet surveyed the small J. H. Hoopes Survey in 1900, placing the South line of the Hoopes coincident with the Kopke line.

The parties recognize that the location of the North line of the McFaddin Survey hinges on the proper location of the Southeast corner of the Smith League—whether at point "A" as contended by plaintiffs or at point "H" as contended for by defendants. We, therefore, direct our attention to the evidence for and against point "A" as the Southeast corner. And the cardinal guide in doing so is to re-trace the footsteps of the original surveyor. It is undisputed that point "A" is 5,000 varas South of the recognized Northeast corner of the league as called for in Armstrong's field notes. Hugly also places the intersection of the East line of the South fork of Taylor's 240 varas North of Point "A"— the original notes call for distance of 260 varas. While this in itself goes to support Hugly's location, the original notes described a stream 16 feet wide and filled with debris and cypress knees while Hugly found a stream over 50 feet wide. He also found that Mayhaw Bayou crossed the South line at 450 varas West of the Southeast corner as located by him, but while the notes called for the course of the stream as N. 70° E, he found it to be N. 70° W. In view of what will be said

hereinafter about the unreliability of the passing calls of the bayous affected and the fact that the course of Mayhaw Bayou has radically changed as is pointed out above, little reliance can be placed on these calls. It should be stated that Kohler, defendants' witness had been first employed by plaintiffs in 1954 to locate the North line of the McFaddin Survey. He testified he started his survey at the Southeast corner of the McFaddin, and after some amount of work he made a preliminary report to his employers with sketch of the area in evidence as plaintiffs' Exhibit A., placing the North line of the McFaddin as now contended for by plaintiffs. However, in this report he recommended that additional surveying and investigation be done. Somewhat later, plaintiffs employed Mr. Hugly for this work at which time Kohler turned over to him the surveying data he had, and after this suit was filed Kohler was employed by defendants. He stated at the trial that he made a much more detailed investigation and concluded the southeast corner of the league was at point "H". Two old residents of the vicinity pointed out the place "H" to him as having been recognized as the Southeast corner of the league for many years. Kohler also found a large levee 6 to 8 feet high running West and North from this point and found a levee running East and West along what he believed to be the South line of the Elliot at the proper distance of 100 varas North of "H". In view of the recognition by both surveyors, Hugly and Kohler, that there was reasonable excess in the lines of the Smith League, it is our opinion that the presumption usually obtaining that the surveyor goes exactly the distance called for in his field notes should not be controlling here. When added to this, we find later surveyors who have surveyed in the area, Ingalls in 1871, Greene in 1889–90 and Kopke in 1931, each of whom placed the Southeast corner of the Smith League at point "H", 5,171 varas S. of point "D", we are thus compelled to recognize the doubt cast upon the validity of point "A" as the southeast corner.

While the calls in a junior survey will not control those of a senior, yet, through the lapse of over 112 years from the making of the original surveys involved, when all marks and trees, both bearing and line, have long perished, and the two bayous mentioned being the only objects left which were called for in the original notes, are of so uncertain efficacy, the ancient works of Ingalls and Greene re-establishing the Southeast corner as found by them is entitled to respect. Greene's report in running East along the league's South line recites "at 4737 varas passed an old oak tree marked for fore and aft tree, very old mark—", and in his re-survey of T. & N. O. No. 141 he recites in going East along his call for South line of the league found "original line tree." These recitations tend to place the South line of the league at the location contended for by defendants and being the best evidence available of old lines, the original evidence thereof having long since disappeared, were admissible. Taylor v. Higgins Oil & Fuel Co., 2 S.W.2d 288, 300, 301 by this court. And the surveys of Ingalls and Greene were also admissible as tending to locate and re-establish the old survey corner and lines. Kirby Lumber Co. v. Adams, 127 Tex. 376, 93 S.W.2d 382; Houston Oil Co. v. Choate, Tex.Civ.App., 215 S.W. 118, affirmed Tex. Com.App., 232 S.W. 285; 7 Tex.Jur. p. 226, sec. 73.

Greene's report shows that he started his survey at the Southwest corner of the league; thence North to Northwest corner; thence East to its Northeast corner where he found the old gun barrel corner in Mr. Craigen's yard; thence he came South along the East line 3556 varas for point he took to be the Northwest corner of the Elliot; thence he surveyed East, stating this to be an old marked line, 4,088 varas, and thence South locating the upper Southeast corner of the McFaddin at 1045 varas on the South fork of Taylor's. Plaintiffs accept and rely upon this part of his work. Greene then, as best we can gather from the record, returned to the Southwest corner of the league and ran the South line out locating and re-establishing its Southeast corner at point "H", both in his report and field notes of T. & N. O. R. R. No. 141. Plaintiffs do not accept this part of his work. However, Mr. Hugly testified that at the time he concluded point "A" represented the true Southeast corner of the league, he did not have Greene's notes of T. & N. O. R. R. No. 141, and that if he had, it would have changed the entire picture as to Greene's location.

While neither side attempts to explain the difference between the line established by Greene as the North line of the Elliot, Reeves and McFaddin Surveys and his location of the Smith League's Southeast corner, we think it may be explained upon the ground that in surveying South from the Northeast (gun barrel) corner a distance of 3,556 varas and turned East finding old marks of a line running East, he failed to take into consideration the fact that the League East line had excess length; although he found the West and North lines with excess of 150 and 65 varas respectively and the field notes call for the North and East lines to be parallel; but when he returned to the League's Southwest corner and surveyed the South line going East he put the Southeast corner at "H" in line with the very old marked tree, and established a corner of T. & N. O. R. R. No. 141 at this point.

Kohler had done much surveying in the area for a considerable number of years and had run out the lines, and was familiar with the Southwest, Northwest and Northeast corners of the league; Greene had located all four corners and the lines of the league in 1889—while Mr. Hugly, a capable surveyor, had had no previous experience in the area and only surveyed the East line to its Northeast corner from point "A", and ran from point "A" West on what he conceived to be the South line for distance of 450 varas to Mayhaw Bayou. While some of Greene's and Kohler's calls for distance to bayous do not correspond with the original field notes, such

calls in these notes were mere passing calls and in view of the passage of time with the natural shift of the meanders of the stream, given to flooding, running through lowland at only 4 feet elevation, with many manmade changes therein, little, if any, probative force should be given these calls. Southwestern Settlement & Development Co. v. Stanburg, 248 S.W. 108 by this court. And when, added to this, Mayhaw Bayou as now depicted lies in an altogether different position from where it did when Armstrong sketched it and surveyed across it in 1845, it would be altogether arbitrary to hold that point "A" must be taken, as a matter of law, as the Southeast corner of the Smith League. West Lumber Co. v. Goodrich, Tex.Com.App., 113 Tex. 14, 223 S.W. 183, 186.

The Southwest corner of the Elliot is located 100 varas North of the Southeast corner of the Smith League. Hugly, plaintiffs' surveyor, ran the West and North lines of the Elliot and instead of going the field note call of 1344 varas for the North line, went 1422.91, stating he found a well marked line on course near by. When asked why he went 78.91 varas extra, he stated the three surveys had excess North and South and East and West as well—but gave no reason why he put all of the East and West excess in the Elliot, but stated on cross-examination about this that he arbitrarily went out the additional distance of 78.91 varas. From this point, surveying South to the bayou, he reached it at a distance of 684.46 varas thus fitting the field notes calling the distance 685 varas. Hugly also stated that, in lieu of going East an additional 78.91 varas he could have gone West a comparable distance and hit a like call South to the loop of the bayou. Thus, while plaintiffs claim to rely upon course and distance to establish the North line of the McFaddin, when the work of Hugly is examined we find that this is not entirely true. He ran from the Elliot Northeast corner East 1346 varas for Northeast corner of Reeves in order that a line run South from this location

would hit the bayou at 780 varas, as called for in the field notes. He stated this point was on the old bayou channel and not on the canal that had been dredged. Hugly did not run out or examine the South lines of the Elliot nor Reeves, although they were the beginning calls of those surveys, nor did he run the common Elliot-Reeves line South of the bayou nor the Reeves-McFaddin line South of the bayou, nor check for old lines or corners in the areas. He testified he could easily tell the difference between the old channel and present canal and that in his judgment the banks of the bayou which he located were the original banks. Kohler on this testified he had long been familiar with the bayou and had done surveying on it, and was employed by the County of Jefferson to check it for drainage project in the year 1941, that it was a stream of many loops or meanders, and he said it was not too uncommon for it to change its course in floods, especially before its channel was extensively widened, straightened and deepened in the more recent past. He further stated that the changes and cut-offs since the turn of the century could seriously interfere with the true locations of any of these lines if the bayou was used to locate them, and he could place no credence in the bayou calls for such purpose. He stated that two old residents of the area, Mr. Clubb and Leo Craigen, pointed out to him point "H" as the recognized Southeast corner of the Smith League, and after running out the East and South lines of the league and finding they intersected at point "H", he started from this point and surveyed 100 varas North for the Southeast corner of Elliot where he said he found a levee running East; he then ran Elliot South line, Reeves South line, then its East line, finding near by an old marked line North of the bayou and established the Northeast corner of Reeves. At this point he found an old iron pipe pointed out to him by Sam Wingate, a chain carrier for Kopke, as having been set there by Kopke for the Northwest corner of the McFaddin in 1931. From this point he ran East along the

Kopke line, an old and well marked and hacked line, and found an old iron pipe pointed out to him by Wingate as having been put there by Kopke for the Northeast corner of the McFaddin. Wingate testified that at the time Kopke ran his line they found old hack and blaze marks along the line. These old pipe locations mark the East and West ends of the line "E–F" on the sketch. Kohler stated the Kopke line corresponded with the South line of the Burnett, South line of Hoopes, and the inner South line of the BBB & C RR surveys and that the Kopke line is practically parallel with and only 50 varas North of what was known in the neighborhood from 1905 to the present as the "Jap" fence line. This old fence was built and maintained by Yoshio Mayumi along a portion of the South line of a large tract of land he owned in the Burnett and that part of the Elliot Survey North of the bayou from 1905 to 1924.

The trial court correctly submitted the questions of boundary to the jury and the verdict is not subject to the complaint that it is against the great weight of the evidence.

Plaintiffs complain of the failure of the trial court to give their tendered instruction upon the priority of calls in field notes in locating land boundaries and corners. We think what was said on this question by Coe, Ch. J., of this court in Swearingen v. Brown, 195 S.W.2d 724, at page 729, controls us here:

"In a case of this character, where none of the objects called for in the field notes can be identified on the ground and the evidence not accounting for their absence or their previous location to that degree of certainty as to justify a court in fixing their location as a matter of law, all of such special requested instructions would have been on the weight of the testimony and would have been more confusing than helpful to the jury in determining the true location of the line inquired about."

See, also, Huff v. Crawford, 89 Tex. 214, 34 S.W. 606. No error is shown, and the judgment below is affirmed. If this judgment becomes final, the clerk is instructed to return to the court below plaintiffs' Exhibit No. 2, and defendants' Exhibit No. 8, referred to in Issues Nos. 1 and 2 so that they may be a part of the permanent record in this case, as provided for in the trial court's judgment.

Affirmed.