## Kirby Lumber Company et al. v. W. J. B. Adams et al.

No. 6618.  Decided April 22, 1936.
Rehearing overruled May 27, 1936.
(93 S. W., 2d Series, 382.)

*E. J. Fountain, Jr., Jesse J. Lee, Andrews, Streeman, Logue & Mobley, Williams, Lee, Sears & Kennerly,* and *McDonald Meachum,* all of Houston, and *Lewis Lanier,* of Jasper, for plaintiffs in error.

It was error for the Court of Civil Appeals to refuse to sustain the proposition of plaintiffs in error that the original

lines and corners of the George Uhler survey show it to be located on the ground as claimed by these plaintiffs in error, so that the verdict and judgment are clearly wrong in disregarding the undisputed evidence determining its location. Wilson v. Giraud, 111 Texas, 263, 231 S. W., 1074; Thatcher v. Matthews, 101 Texas, 122, 105 S. W., 317.

*George E. Holland,* of Henderson, *J. T. Adams,* of Orange, *Adams & Hamilton* and *Roi Blake,* both of Jasper, and *Howth, Adams & Hart,* of Beaumont, for defendants in error.

The verdict and judgment fixing the west line of the George Uhler survey at the place as contended for by the defendants in error is sustained by the evidence, and the Court of Civil Appeals did not err in so holding. Wilson v. Freeman, 108 Texas, 121, 185 S. W., 993; Beck v. Texas Co., 105 Texas, 303, 148 S. W., 295; 3 Tex. Jur., sec. 788, Appeal and Error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Plaintiff in error Houston Oil Company of Texas is the admitted owner of the George Uhler Survey of 640 acres of land in Jasper County, Texas, and the other plaintiffs in error hold interests therein under said Houston Oil Company of Texas. These parties will be designated herein as defendants. Defendants in error are the legal heirs of W. J. B. Adams, to whom was patented the land in controversy January 11, 1908, the same being a tract of 644.5 acres in Jasper County. They were plaintiffs in the trial court and will be designated as plaintiffs here.

The controlling issue in the case is one of boundary, and is to be determined by finding the true location of the west line of the George Uhler Survey. This survey is known as Section 1 of the Toby Scrip Block, consisting of twelve sections in Jasper County and several other sections in Orange County, some of which adjoin the surveys in Jasper County. This survey was patented February 24, 1842. Plaintiffs are claiming that the Adams Survey was laid upon a vacancy which existed between the Uhler and other surveys in the Toby Scrip Block on the east and T. & N. O. Surveys Nos. 81 and 82 on the west. They assert that the true southwest corner of the Uhler Survey and its west line are coincident with the southeast corner of the Adams Survey and its east line. This would place the southwest corner of the Uhler and its west line 785 varas east of the point where defendants claim they are in fact located. A finding of the jury in favor of plaintiffs with judgment in

their favor was affirmed by the Court of Civil Appeals, with dissent by Justice Combs on the issue of boundary. 62 S. W. (2d) 366.

For purposes of illustration we insert photographic reproduction on a reduced scale of map prepared by defendants to represent their theory of the case. We of course do not adopt all that is shown upon this map as having been established by the proof, but in many respects it is correct and may be appropriately used for illustration purposes. The map is as follows:

The Edward Hurst Section, being No. 10 of the Orange County Toby Scrip surveys, was surveyed by B. F. Mott July 14, 1839. It calls to adjoin Survey No. 11 for Sam J. Whitney, which was surveyed by Mott July 11, 1839. Survey No. 12 for James Ryan was made by the same surveyor July 26, 1839, and calls to adjoin Survey No. 11. The Uhler Survey, being No. 1 of the Jasper County Block, was made by Mott November 19, 1839; Survey No. 2 for George W. Duncan was made by the same surveyor the same day, and Survey No. 3 for Grant and Latour was made by the same surveyor November 20; Survey No. 8 was made for Wil-

liam F. Harrison by the same surveyor November 20, 1839. The Uhler Survey at its southwest corner calls for the same bearing trees as are called for at the northwest corner of the Edward Hurst Survey and the bearing trees at its southeast corner are identical with those called for at the northeast corner of the Hurst, the southwest corner of the Duncan and the northwest corner of the Whitney. The bearing trees at the northeast corner of the Whitney are identical with the bearing trees called for at the southeast corner of the Duncan, the southwest corner of the Grant and Latour, the west corner of the J. D. Thomas (formerly the Stephenson) and the northwest corner of the James Ryan. The bearing trees called for at the northeast corner of the Uhler are the same as are called for at the northwest corner of the Duncan, the southwest corner of the Thomas Pratt, and the southeast corner of the William F. Harrison. The bearing trees at the northwest corner of the Uhler are the same as are called for at the southwest corner of the Harrison.

The defendants contend that the west line of the Uhler is accurately located by evidence on the ground of the original bearing trees at its northwest corner, its northeast corner and its southeast corner, as well as from evidence showing location of the north and west lines. They further contend that it may be accurately located by calls for course and distance from the southwest corner of the Hurst, the southeast corner of the Duncan, which is a common corner for five surveys, and from other identified corners in the block. On the contrary, plaintiffs say that the west line of the Uhler is properly located by calls for course and distance from the Neches River as given in the field notes of the patent to the Uhler Survey, and that there are certain circumstances which tend to support the holding that the line is thus located. This line is indicated on the map by the dim line from Z to X. It is admitted that if the Uhler Survey be located as thus contended there is nothing found anywhere to evidence the footsteps of the original surveyor. This being true, the location of the west line of the Uhler at the point Z to X must depend almost entirely upon the call for course and distance from the Neches River.

■ In the patent to the Uhler Survey the first call is as follows: "Beginning on the county line 13,225 varas east of the Neches River, a post oak from whence a pine marked X bears S 50 east 3 varas, another pine marked X bears S 16° 30′ west 3.6 varas." In the original field notes of this survey

it is referred to as being situated 16,000 varas east of the Neches River on the south county line of Jasper County. The first call in the field notes was originally written as follows: "Beginning on the county line 8 miles east of the River Neches." Afterwards "8 miles" was erased and in lieu thereof "16,000 varas" was written. Later a line was drawn through "16,000" and "13,225" was written in lieu thereof. At some later date "12,155" was written above the "13,225." Prior to the location of the Adams Survey the same land, with the exception of a small area off the south end thereof, was surveyed for W. H. Smith under what was known as the Lancaster certificate. This survey was made November 21, 1887. There was offered in evidence by plaintiffs reports of surveyors showing that in their efforts to establish a vacancy between the T. & N. O. surveys and the Toby Scrip Block they began on the east bank of the Neches River where the south line of Jasper County touches the same and surveyed east along the county line 13,225 varas, arriving at the point established for the southwest corner of the Uhler Survey and marked "Z" on the map. The uncertainty of this call as a guide in establishing the southwest corner of the Uhler Survey, even if there were a total absence of all other locative evidence, is manifest from the face of the field notes themselves. No one is contending that the Uhler Survey begins 16,000 varas east of the Neches River, yet it appears that these figures were at one time written into the field notes at two different places. They still appear in the introductory portion of the field notes. The change in the beginning call was perhaps made at the time the patent was issued and was probably arrived at by calculation. However, we do not find it necessary to comment further upon the uncertainty of the location of the Uhler line by this method, as we have reached the conclusion that it is located as contended for by defendants as a matter of law. We do call attention, however, to the rule of law to the effect that where the natural and artificial objects of the grant cannot be identified upon the ground, the proper method of locating the lines and corners will be by course and distance from the nearest recognized and established corner or artificial object with which the field notes are connected. Petty v. Paggi, 254 S. W., 565.

While in our opinion the original northeast corner of the Uhler Survey as well as several of the original corners of other surveys have been located by evidence found on the ground with almost legal certainty, yet as their locations were

shown by evidence of defendants' witnesses, we do not base our opinion upon a location of these corners. We think that the southwest corner of the Hurst Survey was located as a matter of law, but as defendants do not appear to have definitely fixed the line from that corner to the northwest corner of the Uhler, we will not predicate our opinion on the location of that corner.

In the field notes of the Uhler Survey the northwest corner is called to be "a stake from which a pine marked X bears S. 29 east 56 varas and a pine marked X bears S. 67 east 61.6 varas." It will be noted that these bearing trees are at a considerable distance from the stake. At all other corners of the survey as well as at various corners of other surveys in the block the bearing trees are called to be only a short distance from the stake marking the corner. The northwest corner of the Uhler, which is indicated on the map by the letter "H", is, according to all the testimony, in a marsh of considerable size, and the only timber within some two or three hundred varas of that point is situated southeast of the stake marking the corner. According to defendants' witness McMahon he was at this corner in 1909, and at that time found a stake in the marsh and exactly at the distances called for in the field notes of the Uhler Survey and on the right course he found two pine trees. One of the trees had been cut down and the cross mark had been cut out. The other tree was then standing, but the tree had been burned to such extent that the mark could not be identified. According to all of defendants' witnesses the stumps of these two trees were found in 1918. It was shown that these trees were the nearest trees to the corner which could have been marked as bearing trees. Plaintiffs' witness Daniell testified that he was at the point marked H on the map in 1925 and at that time found "stumps of two bearing trees at exactly the right distance and on exactly the right course from that stake; two bearing trees in the original field notes." Again, he testified: "Yes sir, it is a fact that I found two bearing trees at that point, or two stumps, that exactly fitted the call for the bearing trees both as to course and distance." Further, he testified: "So, taking the original field notes of the George Uhler at the northwest corner of the survey where the Houston Oil Company claims it to be, at point H on the map, I did find the stumps of both of those pine trees at exactly the right course as called for and exactly at the right distance as called." Plaintiffs' witness Blake testified that in 1906 he was

at the point claimed by defendants as the northwest corner of the Uhler Survey and at that time he found the tree with an old corner mark on it, which was at the proper distance and course from a stake in the marsh; and the stump of that tree was standing at the time he testified. He further testified: "Yes sir, when I got to the point H on the map I found the stake out in the marsh; and I have testified that that stake had been fitted to two trees at different times which bore the course and distance as called for in the original field notes. Yes, sir, in the trial of the case of Adams v. Burrell, Garland Smith and William Holliday brought into the court room the original cross cut out of one of those trees."

On August 1, 1890, L. D. Scarborough, a State Surveyor, under an Act to provide for ascertaining the conflicts and errors in and making proper corrections of surveys of land made for the School Fund, resurveyed various T. & N. O. sections, including Sections 81 and 82, and filed his report in the General Land Office. Among other things, he reported that at the southwest corner of the Hurst Survey, he found both of the original bearing trees; that one of the trees was still standing, plainly bearing the corner marks, but that the other was dead. The County Surveyor of Jasper County shortly thereafter made a connection between this corner and the Williamson Survey a short distance to the northwest. Scarborough's report then continues as follows: "We then ran north on very old blazed line, at 1900 varas passed the Jasper and Orange County line, found no corner marks, the old timber at this point having been destroyed by storm, this point is 785 varas west of the corner made by W. W. Blake for the N. W. corner of Ed Hurst and S. W. corner of Geo. Uhler Surs. and is 12,498 varas east of the Neches River. Continuing north on old blazed line, which has been side hacked later for east line of Sur. No. 82, T. & N. O. at 1900 varas from County line, corner in marsh, from which a pine having an old X bears S. 67° E. 61 varas, as called for in Uhler's original field notes; the other bearing tree having entirely disappeared. We also found an old blazed line running east from this point."

Based upon this report the Commissioner of the General Land Office permitted the raising and floating of the Lancaster certificate, by virtue of which the Smith Survey had been made appropriating practically the same land later covered by the Adams patent. It therefore appears that but for this report the Lancaster certificate would probably have

never been floated, and plaintiffs in this case are put in the position of accepting the benefits of that reports so far as the floating of the Lancaster certificate is concerned, and denying its force as evidence upon the question of the location of the Uhler line and corner. We merely call attention to this without predicating our decision thereon.

On April 19, 1876, James Ingalls made T. & N. O. Surveys Nos. 81 and 82, the location of which are admitted by all parties. They are correctly designated on the map. The southeast corner of Survey No. 81 is called to be in the west line of the William F. Harrison Survey, and its east line is coincident with the west line of the Harrison and the Hentzelman Survey. The Adams Survey calls for the east line of these T. & N. O. sections. In making Survey No. 82 Ingalls called to begin at the southeast corner of Survey No. 81 and on the west line of the Harrison Survey. His next call is as follows: "Thence S. 405 varas his (Harrison's) S. W. corner, at 2726 varas corner on E. Hurst west line." These field notes were approved by District Surveyor L. D. Scarborough, who afterwards made the report above mentioned to the Land Office. The southeast corner of T. & N. O. Survey 82 is identified on the ground and is found at the correct distance south of the southwest corner of the Uhler as contended for by defendants.

The Harrison Survey calls to begin at the northwest corner of the Uhler and for the bearing trees as are called for in the Uhler field notes. The southeast corner of the T. & N. O. Survey No. 81 and the northeast corner of Survey No. 82 is now located upon the ground, and is found to be 405 varas north of the northwest corner of the Uhler as claimed by defendants.

R. F. Adams, one of the plaintiffs, testified that in 1876 he lived in the neighborhood of the northwest corner of the Uhler Survey as claimed by defendants; that he saw this corner in the marsh a day or two after Ingalls had surveyed the T. & N. O. sections; that he then saw a stake in the marsh and the two marked bearing trees which defendants are now claiming were at the proper course and distance from the corner as called for in the Uhler field notes; that these trees were freshly marked, and that Ingalls marked the same; that these trees were in the same line Ingalls was running as the east line of Section 82.

We think this testimony, in connection with what has heretofore been set out, is decisive of this case. Ingalls called for

this southwest corner of the Harrison and northwest corner of the Uhler at 405 varas from the southeast corner of Section 81 and northeast corner of Section 82 and it is found at that point. This corner of the Uhler as thus located is found almost exactly at the proper course and distance from the other long recognized and established corners of the Uhler Survey as claimed by defendants. For instance, it is almost the correct distance due west of the northeast corner of the Uhler (point O on the Map) as claimed by defendants, which corner was unquestionably identified as an extremely old corner, the bearing trees being in exactly the proper locations from the corner stake as called for in the Uhler field notes. From this northeast corner to the corner in the marsh there is a very old marked line. Bearing this exact relationship to the other long established corners of the Uhler Survey, the call for this corner could not have been made by mere inadvertence or by mistake. It necessarily follows that Ingalls could not have identified and called for this corner at this precise point without having seen it, or without having actually surveyed the Uhler on the ground. There is no reason to believe that he actually surveyed the Uhler. It follows we think as a conclusive inference that he actually saw and identified the northwest corner of the Uhler survey and that he re-marked and re-established the same as testified to by Adams. Having re-marked the same, and his corner now being identified, it has the dignity of the original corner, even though the original bearings at that point may have disappeared. Houston Oil Co. v. Choate, 215 S. W., 118, affirmed (Com. App.) in 232 S. W., 285; Plowman v. Miller, 27 S. W. (2d) 612; Taylor v. Higgins Oil & Fuel Co., 2 S. W. (2d) 288, 301.

Under the rules laid down in the case of Taylor v. Higgins Oil & Fuel Co., supra, the question of location of the west line of the Uhler under the proof in this case is one of law; and it follows that the finding of the jury was without evidence to support it.

There is a vast amount of other evidence strongly supporting the conclusion that the Uhler northwest corner is located as here found, but as it was furnished largely by defendants we have not set it out. We do, however, call attention to a significant statement in the report of J. E. McDonald, County Surveyor of Jasper County, which report was offered in evidence by plaintiffs, and which was evidently the report upon which the Commissioner of the General Land Office patented the land to Adams. After reciting that he ran 13,225

varas from the Neches River along the county line to the point set up by him for the southwest corner of the Uhler Survey, he then recited that he ran north 1930 varas (from Z to Y on map) and at that point "intersected an old blazed line, course east and west, extending entirely through the block of twelve sections, and appeared to be the base line from which the sections were located." Both of the Surveyors for plaintiffs admitted that there was a very old line extending from the point X on the map to the corner in the marsh, and were unable to explain its presence except on the theory that it was the north line of the Uhler survey.

The Houston Oil Company of Texas and those holding under it were shown to have title to such interest as may have been acquired by location of the Lancaster certificate and the survey made for Smith thereunder. This survey, as well as the patent to Adams, included a portion of the William F. Harrison Survey and a portion of the Samuel Hentzelman Survey. The Harrison Survey calls for the Uhler and its corners and the Hentzelman Survey calls for the Harrison and its corners. It follows therefore that the effect of our holding in this case is that there was in fact no vacancy between the T. & N. O. Surveys and the Uhler, Harrison and Hentzelman Surveys as originally made on the ground. We find, however, that after the Smith Survey under the Lancaster certificate was made, the Harrison was resurveyed to conform with the Smith Survey and the Joshua Cole Pre-emption, and it was probably patented according to its corrected field notes. The patent is not shown in the record and the facts with reference to this were not fully developed. We are not prepared therefore to say whether or not that portion of the Harrison Survey omitted from its original field notes and covered by the Smith Survey was abandoned and became vacant land. See in this connection the case of Miller v. Yates, 122 Texas, 435, 61 S. W. (2d) 767. If in fact this part of the Harrison Survey became vacant, the question of whether or not the Lancaster certificate could legally be floated, it being only partly in conflict with senior surveys, and the question of whether or not after it was floated the land became vacant again, so as to be appropriated by the Adams patent, are questions which have not been fully briefed, and which we are in no position to definitely determine.

The judgments of the trial court and of the Court of Civil Appeals in so far as they denied a recovery of damages in favor of plaintiffs against defendants is affirmed. In all

other respects these judgments are reversed, and judgment is here rendered in favor of the defendants, as their respective interests may be, for all of the George Uhler Survey as described in its patent, its west line to be located by beginning for its southwest corner at the intersection of the south county line of Jasper County by the east line of T. & N. O. Section No. 82, and running thence north with the east line of said Survey 1900.8 varas to the corner located on said line in the marsh. The case as to all that portion of the Adams Survey lying north of the north line of the Uhler Survey as herein established is reversed and remanded for another trial.

Opinion adopted by the Supreme Court April 22, 1936.
Rehearing overruled May 27, 1936.