EAST TEXAS PULP AND PAPER COMPANY et al., Appellants,

v.

S. N. COX et al., Appellees.

No. 6582.

Court of Civil Appeals of Texas.

Beaumont.

June 11, 1964.

Rehearing Denied July 8, 1964.

B. F. Whitworth, Jasper, Burton W. Morris, J. M. Slator, III, Houston, Wheat & Wheat, Woodville, for appellants.

John T. Lindsey, Port Arthur, R. E. Biggs, Liberty, for appellees.

PARKER, Justice.

This is a boundary suit. The parties will be designated herein as they appeared in the trial court. S. N. Cox and wife, Lillie Marsh Cox, were plaintiffs. Defendants were East Texas Pulp and Paper Company, Sinclair Oil and Gas Company, Republic Production Company, Atlantic Refining Company, W. L. Duff and wife, Viola Duff, and T. A. Duff and wife, Luzelle Duff.

It was stipulated: That plaintiffs do not own title to any part of E. T. R. R. Co. Section 13, Abstract No. 239, Tyler County; that plaintiffs own title to a certain tract designated as Lot No. 7, said to contain 50 acres, more or less, out of said Lindsey Survey, Section 2, conveyed by J. O. Lindsey to Mrs. L. B. Marsh by deed dated February 21, 1911, SAVE AND EXCEPT such part of said Lot No. 7, if any, as may be located South of the South line of said Lindsey Survey; that the only issue in this case is the true location on the ground of the common boundary line between the Lindsey Survey (E. T. R. R. Co., Section 2) and E. T. R. R. Co., Section 13; and that defendants own title to all of said E. T. R. R. Section 13.

Plaintiffs sued for the title and possession of 1.69 acres of such 50 acres as being a part of Section 2. Defendants contended this 1.69 acres of such 50 acres was south of the Lindsey South line and was in Section 13.

The South line of Section 2 is coincident with the North line of Section 13. Supposedly, each Survey was in the form of a square with the lines running North and South, East and West, with Section 2 lying to the North, adjoining and contiguous to Section 13.

The jury found that the South line of Section 2 (known as the Lindsey Survey) as surveyed by the surveyor, John McBride, in 1870, was located upon the ground between Pts. 2 and 3 as shown on Plaintiffs' Exhibit P–2. This was a finding that the 1.69 acre tract was a part of Section 2. Upon this verdict, judgment was entered for plaintiffs for the title to and possession of such 1.69 acres, being the land sued for by plaintiffs.

The only issue in this case is: "Where did John McBride locate the South line of E. T. R. R. Co. Section 2 in 1870?"

Defendants' points of error are presented and argued together. We do likewise. Defendants' points of error attack the verdict of the jury as having no evidence to support

it and that there is insufficient evidence to support it. They urge that the evidence is such that "reasonable minds could not differ as to the conclusion that the South line of E. T. R. R. Co. Section 2 is a line running from Red Pt. 2 to Red Pt. 3A on Plaintiffs' Exhibit P–2."

To understand the jury verdict and the evidence bearing upon defendants' points relating to the location of the South line of E. T. R. R. Co. Section 2, an excerpt from Plaintiffs' Exhibit P–2, omitting color designation of corners and points thereon, is set forth.

The above plat omits the lines of a 1911 partition of Section 2 except as to what is now a Coats 50 acre tract and the Marsh or Cox 50 acres.

McBride's 1870 field notes are used in the patent covering E. T. R. R. Co. Section 2 issued J. O. Lindsey in 1905, to-wit:

"BEGINNING on the West boundary line of the Liberty County School League at the Southeast corner of Section No. 1, a stake from which a Pine 36 inches in diameter bears North 60 degrees East 3 varas dist. Another, 30 inches in diameter bears South 40 degrees East 2 varas dist.;

"THENCE South on West line of said League 1900 varas, a stake from which a Pine 10 inches bears South 25 degrees East 2 varas dist. Another, 16 inches in diameter bears North 8 varas dist.;

"THENCE West 1900 varas, a stake from which a Pine 20 inches in diameter bears South 32 degrees East 5 varas dist. Another, 24 inches in diameter bears South 70 degrees West 1 varas dist.;

"THENCE North at 1900 varas Southwest corner of Section No. 1 a stake from which a Pine 18 inches in diameter bears North 10 degrees East 8 varas dist. and a Pin Oak 18 inches in diameter bears South 20 degrees East 4 varas dist.;

"THENCE East 1900 varas to the place of beginning."

On said plat is a 50-acre tract in the Southeast corner of said Section 2. This 50-acre tract was conveyed by J. O. Lindsey to Mrs. L. B. Marsh by deed dated February 21, 1911, and the field notes are as follows:

"BEGINNING at the Southeast corner of said R. R. Co.'s 640 acres Survey, a stake for corner;

"THENCE West with the South line of said Section No. 2, at 1000 varas the Southeast corner of Lot No. 1, a stake, a Pine 30 inches marked X North 60½ degrees West 19 varas and Pine 22 inches marked X South 22½ degrees East 15⅖ varas;

"THENCE North, with East line of Lot No. 1, and at 282⁹⁄₁₀ varas the Northeast corner of said Lot No. 1, a stake, a Pine 6 inches marked X North 62½ degrees East 17⅕ varas and Pine 8 inches marked X South 44 degrees West 1 varas;

"THENCE East, at 1000 varas the East line of said Section No. 2, a stake, a Pine 9 inches marked X North 40 degrees East 9⅗ varas and Pine 7 inches marked X North 75 degrees West 14 varas;

"THENCE South with said East line at 282⁹⁄₁₀ varas the place of beginning, containing 50 acres of land, more or less."

Mrs. L. B. Marsh is the same person as Mrs. D. W. Marsh and the plaintiff, Mrs. Cox.

The 1.69 acres of such 50 acres sued for by plaintiffs, the surveyor Coats, in 1961, found to be described by objects on the ground as follows:

"BEGINNING at the Southwest corner of this 50-acre tract as described in original sub-division of said Section No. 2, being also the southeast corner of the W. A. Coats 50 acres; stake for corner from which a Pine 30 inches in diameter marked X bears North 60 degrees 30 minutes West 19 varas, and a Pine stump hole bears South 22 degrees 30 minutes East 16.5 varas;

"THENCE North 0 degrees 25 minutes East, with middle division line of said subdivision of Section No. 2; 18.86 varas to point in new yellow painted line, for the North line of said encroachment.

"THENCE North 89 degrees 55 minutes East, with said new yellow painted line, 797.29 varas to concrete monument.

"THENCE South, with new painted line, 5.37 varas, to point in original South line of said Marsh 50-acre tract.

"THENCE South 88 degrees 32 minutes West with original line, 979.3 varas to the place of beginning; containing 1.69 acres of land, more or less."

Such tract is shown on Plaintiffs' Exhibit P–2 as Pt. AA to Pt. BB to Pt. C to Pt. D to Pt. AA.

The surveyor, Savage, witness for defendants, and the surveyor, Coats, witness for plaintiffs, did not find any of the bearing trees at any corner called for in McBride's field notes to said Section 2. The surveyor Coats found the East line of said Section was 1935.76 varas in length; the North line to be 2004.79 varas in length; the West line to be 1950.01 varas in length; and the South line to be 1976.24 varas in length. The course of these lines was found by Coats to be as follows:

The East line: South 0 degrees 54 minutes West;

The West line: North 0 degrees 3 minutes East;

The North line: South 89 degrees 40 minutes East;

The South line: North 89 degrees 21 minutes East as to West half; and North 88 degrees 32 minutes East as to East half.

The surveyor Savage found the East line of said Section to be 1937.60 varas in length; the North line to be 2019.88 varas in length (the two surveyors did not agree on the location on the Northwest corner of said Section); the West line to be 1966.18 varas in length (the two surveyors did not agree on the location of the Southwest corner of said Section); the South line to be 1979.68 varas in length.

Coats found the Southwest corner of said Section to be 29.8 varas South of the Southwest corner of said Section as located

by defendants' surveyor Savage. Coats and Savage agreed upon the location of the Northeast and Southeast corners of said Section.

From the Southeast corner of Section 2, Coats found only one old hacked surveyor's line going West in 1954 which is the line indicated on Plaintiffs' Exhibit P–2 as the line Pt. 2 to Pt. 3. Plaintiffs and defendants agree on the location of the East line, the Northeast and Southeast corners of Section 2.

Coats testified the old marked line was accepted by him in 1954 as the South line of Section 2; and as the "South line of the J. O. Lindsey Survey when it was patented"; that the South line of the Lindsey Survey and the South line of Mrs. Cox's fifty (50) acres are one and the same line; that in 1954 he found a pine knot and newer witness trees indicating where the Southwest corner was generally accepted at the time, being Pt. 3, Plaintiffs' Exhibit P–2.

J. O. Lindsey lived on Section 2 from some time prior to 1905 to 1915. In 1905 and prior to the issuance of the patent, J. O. Lindsey had the surveyor, Willie Neal, survey Section 2. The lines were definitely hacked. In the surveying crew was the witness, John T. Lindsey, a son of J. O. Lindsey. John T. Lindsey testified that all four lines of Section 2 were re-surveyed and the lines hacked in 1905 by Neal, and are in the same position as Pt. 1 to Pt. 2, Pt. 2 to Pt. 3, Pt. 3 to Pt. 4, and Pt. 4 to Pt. 1 on Plaintiffs' Exhibit P–2, representing the boundary lines of Section 2 on the ground according to the surveyor Coats.

 The survey of Willie Neal in 1905 was admissible as tending to locate and re-establish the original corners and boundary lines of Section 2 according to McBride's 1870 notes. As his work was done only 35 years after the original work, the presumption arises that Willie Neal found McBride's stakes, bearing trees, line of the Hardin County School Land Survey as contained in McBride's notes, and the lines marked by McBride in 1870. Thatcher v. Matthews,

101 Tex. 122, 105 S.W. 317. The boundary lines of Section 2 found and re-marked by Neal in 1905 and their location by the witness, John T. Lindsey, is evidence of the actual location of the lines by McBride, not evidence of a change in location. Kirby Lumber Co. v. Adams, 127 Tex. 376, 93 S.W. 2d 382; Houston Oil Co. v. Choate, Tex. Civ.App., 215 S.W. 118, affirmed Tex.Com. App., 232 S.W. 285; 7 Tex.Jur. 226, Sec. 73; Barnes v. Wingate, 342 S.W.2d 352, Tex.C.C.A., Beaumont.

John T. Lindsey testified he continuously lived on the land from 1905 to 1915; that after 1915 he had been on the land at least once a year except during the years 1918 and 1919; that there were no lines marking Section 2 except those he saw with the surveyor Neal until 1960 or 1961 when the defendant Duff put a stock proof fence north of the old marked line John T. Lindsey said Neal, in 1905, found to be the South line of Section 2, the latter being line Pt. 2 to Pt. 3 on Plaintiffs' Exhibit P–2. This new fence was along a new line painted yellow. On Plaintiffs' Exhibit P–2, the new line is marked Pt. 2 to Pt. 3A.

In 1954 Coats found a fence running from Pt. 3 to Pt. 4, Plaintiffs' Exhibit P–2, along a marked line. This fence went across Pt. 3A.

Pt. 4 was considered to be the Northwest corner of Section 2 by Coats in 1960. Two old lines intersected at this Pt. 4. One line ran East and West; the other North and South, and continued on north as boundary line of another survey. Both lines were old, marked and hacked "a long time, rough wood, marked and hacked". The bearing trees called for by McBride in 1870 were not standing. Coats found depressions and a "litered pine stump, one of the witness trees called for at that corner in very plain evidence" at the proper course and distances from Pt. 4 that could have been stump holes of such other bearing trees. Coats did not consider stump holes of themselves to be conclusive evidence of a corner location. This corner,

Pt. 4, Coats found to be accepted by adjacent landowners, and in harmony with corners set by adjacent owners evidenced by concrete monuments with brass tops inscribed with the designation of corner and Survey. Coats did not think such adjacent owners "were fooling around" in placing such concrete monuments with inscriptions on brass plates plainly stating what corner of what Survey same was claimed to be.

Mrs. Cox sold timber on her 50 acres in 1929 to Kirby Lumber Corporation. Her agent, Burns Gardner, had been familiar with her boundary lines for 40 years prior to date of trial. Kirby cut to her boundary lines including the old marked line Pt. 2 to Pt. 3.

In 1945 Mrs. Cox sold timber to Coats and Goolsby. They cut down to her old marked South line. There was no other line on the ground at that time. Again, in 1950, she sold timber to George Stanley, which was cut to same lines. No one, including defendants, protested the cutting of such timber to such old South line.

The jury found, from a preponderance of the evidence, that the surveyor John McBride at the time he made the survey of the E. T. R. R. Co. Section No. 2, known also as the J. O. Lindsey Survey, in the year 1870, located the South line thereof upon the ground between Pts. 2 and 3 as shown on Plaintiffs' Exhibit P–2.

Defendants urge that the evidence, as a matter of law, locates said South line as a line running from Pt. 2 to Pt. 3A on Plaintiffs' Exhibit P–2. To sustain this contention, defendants say:

(1) The only issue in this case is: "Where did John McBride locate the South line of E. T. R. R. Co. Section No. 2 (J. O. Lindsey Survey) in 1870?"; and

(2) Such original location being established and proven, it cannot, as a matter of law, be moved, changed or shifted by any Survey made at some date subsequent to 1870.

■ The jury could accept or reject the stump holes at Pt. 3A as being evidence of the former location of the bearing trees called for by McBride in 1870. Savage rejected the depressions at Pt. 4 as being evidence of the former location of bearing trees called for by McBride in 1870 at the Northwest corner of Section 2, even though old marked lines intersecting at that point supported the conclusion that same is the northwest corner of Section 2. Stump holes are not convincing or conclusive evidence of themselves that bearing trees called for by a surveyor stood in such places at the time of survey. Reasonable minds could well reject stump holes as evidence of a corner when no marked lines intersected at that point.

Neither surveyor witness found any stake for corner or any bearing tree at any corner called for by McBride in his field notes for Section 2. This is timbered land.

■ Until the contrary is made to appear, it is to be presumed the surveyor McBride performed his duties which included marking the lines, which could be done in timbered country, and to designate and call for such artificial objects as he should make which would be sufficient to locate and identify the survey as actually made upon the ground. Finberg v. Gilbert (Nov. 29, 1911), 104 Tex. 539, 141 S.W. 82, 85. No party to this suit contends that the survey was not made upon the ground by McBride in 1870. The Supreme Court of Texas, at an early date, in Linney v. Wood, 66 Tex. 22, 17 S.W. 244, 246, held:

"In reference to such matters as boundaries of lands surveyed long ago, the signs of which have been destroyed, and the location of which is not within the memory or knowledge of living men, many facts, tending to solve the question as to their true location, are permitted to go to the jury which the rules of evidence would exclude in other cases."

The East line of Section 2 was marked by old blazes, one set of old hacks, all on or along an old fence to the accepted Southeast corner of Section 2.

Going West along the South line of Section 2 and the South line of Mrs. Cox's 50 acres, as Coats accepted such line, Coats found an old wire fence, but little standing timber, for 200 varas. At 400 varas, he entered heavily timbered area with fairly old hacks following an old blazed line all the way to the Southwest corner of said 50-acre tract where he found the original witness trees called for in 1911, "Pine 30 inches, South 60—19 varas still standing there with the cross on it." Going North from this corner, Coats found the West line of Mrs. Marsh's 50 acres well marked, and the bearing trees called for at her Northwest corner in her deed of 1911, still standing. Mrs. Marsh is now Mrs. Lillie M. Cox, plaintiff.

Coats surveyed three 50-acre blocks, which were part of Section 2 and owned by W. A. Coats in 1954. (The plat herein does not show two of said 50-acre blocks, but same are upon Plaintiffs' Exhibit P–2.) His other surveying in this area was in 1961. Plaintiffs' Exhibit P–2 shows the location of such lands, reflecting Coats' work on the ground. The line DC and its extension to the South represents what Savage considered to be the location of the West line of Liberty County School Land Survey recently marked by the surveyor Savage, this line being 200 varas West of the Southeast corner of Section 2.

Savage found no marked line from his Pt. 3A on Plaintiffs' Exhibit P–2 running East therefrom. His opinion that such point was the Southwest corner of Section 2 was based primarily on stump holes. The jury rejected his opinion.

Savage found no stump holes and no marked line running South or East from his Pt. 4A on Plaintiffs' Exhibit P–2. It was Savage's opinion such point was the Northwest corner of Section 2. Savage rejected the stump holes at Pt. 4, same exhibit, as not being conclusive in locating the Northwest corner of Section 2. The

jury rejected the stump holes at Pt. 3A, same exhibit, as not being conclusive in locating the Southwest corner of Section 2.

The true location of the South line of Section 2 was a question of fact properly submitted to the jury.

There was evidence supporting the finding of the jury on the issue of the location of the South line of E. T. R. R. Co. Section 2. Defendants' "no evidence" points are therefore overruled.

After considering all the evidence, both favorable to and contrary to the verdict of the jury, all of defendants' other points of error are overruled.

The judgment of the trial court is affirmed.