**UNITED STATES of America,**
**Plaintiff,**

v.

**CHAMPION PAPERS, INC., Defendant.**

**Civ. A. No. 69–H–896.**

United States District Court,
S. D. Texas,
Houston Division.

May 17, 1973.

Anthony J. P. Farris, U. S. Atty., Winston P. Crowder, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Philip J. John, Jr., Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

In this action which was tried to the Court, the plaintiff seeks to resolve a boundary dispute between the United States Forest Service and defendant Champion Papers, Inc. Jurisdiction is invoked under 28 U.S.C. § 1345.

The land which is the subject of the controversy is located in San Jacinto County, Texas. In 1938 the Government purchased most of the land comprising the Pleasant B. Riggs survey from Gibbs Brothers and Company. This land is a part of the Sam Houston National Forest located in Texas. In 1947 the defendant Champion Papers Company purchased the adjoining surveys of land. These surveys adjoin the southeast and southwest boundaries of the Riggs survey and are known as Washington County Railroad Company surveys No. 1, No. 2 and No. 5. The Riggs survey approximates a square, measuring about two miles in length on each side. It is laid out so that the corners are located at approximately true north, south, east and west. The property in all of these surveys has been utilized as forest land with its timber being cut at various times. Historically, fences have rarely, if ever, been built in the area of dispute.

However, defendant has recently constructed a fence which follows its claimed boundaries in the disputed area.

The Riggs survey was originally surveyed for the Republic of Texas by Job S. Collard in February of 1838. The Washington County Railroad Company surveys were originally surveyed for the State of Texas by John Wade in 1861.

While contested in some respects, the following sketch most accurately depicts for illustrative purposes the general location of the Riggs survey in relation to the adjoining surveys:

[A7572]

The land which is in dispute constitutes approximately 32.85 acres. The Government as owner of the Riggs survey claims its southeast boundary runs from monument J–226 to monument J–156. Defendant Champion Papers, Inc., as owner of Washington County Railroad Company surveys No. 2 and No. 5,

484

claims its northwest boundary runs from monument SJ–143 to monument SJ–145, and it has constructed a fence along such line. The land in contention is illustrated on the accompanying diagram:

ENCLOSURE OF CHAMPION
PAPERS INC. ON USA
TRACT J3f

The 135 year old original field notes of the surveyor Job S. Collard read as follows:

Survey for Pleasant B. Riggs of sixteen Labors 782131⁵⁰⁄₁₀ square varas of land situated in Montgomery Co. west of the east forth of San Jacinto on Nebletts Cr. being a part of the quantity of land to which he is entitled by virtue of a certificate No. 98 issued by the board of land commissioners for the County of Jefferson—Beginning on the S. West boundary of Andrew Briscoe's survey 850 varas from the S.S.W. corner of said survey set post from which a white oak 30 inches in diameter bears N. 5° E. 8⁹⁄₁₀ varas dist and an ash 12 inches in diam bears S. 85° W. 18⁴⁄₁₀ varas dist.

| varas | Thence S. 44° W. |
|---|---|
| 560⁹⁄₁₀ | To Neblett's Creek 4 varas wide runs S. 75° E. |
| 4096⁹⁄₁₀ | To 2d corner set post from which a pine 12 inches in diam bears S. 89° W. 4⁹⁄₁₀ varas dist and a pine 36 inches in diam bears N. 23° W. 6⁴⁄₁₀ varas dist. |
| | Thence N. 46° W. |
| 4096⁹⁄₁₀ | To 3d corner set post from which a sweet Gum 10 inches in diam bears N. 22° E. 9⁹⁄₁₀ varas dist and a sweet Gum 8 inches in diam bears S. 22° W. 9⁹⁄₁₀ varas dist. |
| | Thence N. 44° E. |
| 470 | To Nebletts Creek 3 varas wide runs S. 75° E. |
| 4056 | Intersected said Briscoe's survey set post from which a Spanish oak 10 inches in diam bears S. 62° W. 5⁴⁄₁₀ varas dist and a Spanish oak 8 inches in diam bears S. 38° E. 4⁷⁄₁₀ varas dist. |
| | Thence S. 46° E. with said survey |
| 700 | To Spring branch 2 varas wide runs N. 45°E. |
| 4104⁹⁄₁₀ | To the beginning. |

As can be seen from the claims of the parties and an examination of the diagrams, the precise issue before the Court is the location of the southeast boundary of the Riggs survey which, in turn, is dependent upon the location of the south corner of the survey. The problem is essentially one of retracing the footsteps of the original surveyor as he conducted the Riggs survey in 1838.

The Government contends that the south corner of the Riggs survey is at the point monumented by monument J-226, which is located approximately 100.-98 varas southeast of defendant's monument SJ-143. Reliance is placed upon a 1929 resurvey conducted at the behest of Gibbs Brothers and Company. The proof adduced by the Government consisted essentially of (1) evidence with reference to the remains of certain bearing trees recited by surveyor Collard which consist of stump holes; (2) evidence with reference to a passing call by Collard to Neblett's Creek; (3) evidence with reference to a corner of an adjoining senior survey at which surveyor Collard began his survey; (4) evidence with reference to an adjoining junior survey which consisted of a projection of a line, the Bybee line, from Little Caney Creek; and (5) evidence with reference to various resurveys of the Riggs survey.

Defendant concedes that (1) the stump holes are in the locations asserted by the Government which are in the relative positions that surveyor Collard called for bearing trees in his field notes; (2) the distance from the eastern corner of the Riggs survey which is located by monument J-156 to Neblett's Creek in a southeastern direction more nearly corresponds to the distance called by surveyor Collard than the distance from the east corner of the Riggs survey as established by the 1912 resurvey of J. W. Oliphint; and (3) a projection of the Bybee line in a northeastern direction would be close to monument J-226.

Defendant, however, contends that the Government cannot establish by a preponderance of the evidence that the Collard survey established the southeast boundary of the Riggs survey to correspond to the line between J-226 and J-156. Defendant contends that the testimony has failed to locate any corner of the Riggs survey by original patent evidence and that the Bybee line is in conflict with the original patent notes of the Washington County Railroad Company surveys. It is asserted that there is as much evidence to establish the south corner of the Riggs survey at SJ-99 as there is for establishing it at J-

226. In this regard it is strenuously urged that there is no substantial confirmable original patent evidence to be located at either monument. It is also asserted that there is evidence which can support a finding of the south corner at SJ-143. As a result of the inability to find original patent evidence, defendant contends that the course and distance from the stipulated west corner of the Riggs survey should control the establishment of the south corner.

The Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

I. The East Corner of the Riggs Survey

1. Surveyor J. S. Collard commenced the 1838 survey on the east corner of the Riggs survey at a point 832½ varas from the southwest boundary of the Vital Flores or Briscoe survey. This point is to the northwest of Neblett's Creek and was witnessed by an ash tree bearing S 85° W, 18⁴⁄₁₀ varas in distance and a white oak tree bearing N 5° E 8⁴⁄₁₀ varas in distance.

2. The ash and the white oak trees have since disappeared.

3. A stump of an ash tree located in 1954 by surveyor Baldwin and in 1955 by the surveyor Morgan is the apparent sprout of the original ash tree marked by surveyor J. S. Collard.

4. As a result of the soil composition in the area, ash trees will not ordinarily grow any farther N 45° W than 850 varas from the common corner of the Vital Flores survey and the Edward Russell survey.

5. A white oak stump hole which is 8⁴⁄₁₀ varas from a point called for by surveyor J. S. Collard is actually the stump hole of the original bearing tree called for by this surveyor. Surveyor Baldwin located both the white oak tree stump hole and the ash tree stump hole.

6. U.S. Forest Service monument J-156 marks the true location of the east corner of the Riggs survey as established by surveyor J. S. Collard.

7. In 1838 Neblett's Creek crossed a line projected on a course S 44° W from monument J-156 at a distance of 560⁹⁄₁₀ varas. In 1967 this creek crosses a line projected on a course S 44° W from monument J-156 at a distance of 507 varas. As a result, since 1838 the Creek has moved in an easterly direction leaving several old runs from a distance of 560⁹⁄₁₀ varas to its present course.

8. The east corner of the Riggs survey cannot be located farther up the southwest boundary of the Vital Flores survey, since any line projected from such a corner on a course S 44° W would cross Neblett's Creek at a distance that could not reasonably comply with the distance called for by surveyor J. S. Collard.

9. The defendant has presented no evidence locating the east corner of the Riggs survey.

10. The defendant did not survey or report any findings along a line projected N 44° E from its monument SJ-99.

11. The defendant did not survey or report any findings along a line projected N 44° E from its monument SJ-143 past the intersection of such line with a line projected N 45° W from the boundary between Washington County Railroad Company survey Nos. 5 and 6.

II. The South Corner of the Riggs Survey

1. Surveyor J. S. Collard located the south corner of the Riggs survey by marking two trees "P.R." These trees included a 12 inch pine located 4⁹⁄₁₀ varas S 89° W and a 36 inch pine located 6⁹⁄₁₀ varas N 23° W from a post at the established corner.

2. Two stump holes with bearings and distance of S 89° W 4⁹⁄₁₀ varas and N 23° W 6⁹⁄₁₀ varas were located from the intersection of well-marked lines by surveyors J. V. Butler and J. W. Oliphint in 1929.

3. At the intersection of the well-marked lines there was one line running

from the northeast on a course S 44° W and continuing through such point.

4. A second well-marked line was on a course running from the northwest S 46° E. However, this line did not extend beyond the intersection.

5. These stump holes are holes left by the trees marked "P.R." by surveyor J. S. Collard in 1838 and called for by surveyor Wade in his field notes for the east corner of the Washington County Railroad Company survey No. 1 in 1861.

6. U.S. Forest Service monument J–226 now marks the corner of the Riggs survey as first established by surveyor J. S. Collard. These two stump holes are on a marked line, the course of which is S 44° W from U.S. Forest Service monument J–156.

7. There is no original patent field note evidence at defendant's monuments SJ–143 or SJ–99.

8. A projection of a line S 44° W from U.S. Forest Service monument J–226 intersects the Riggs survey at a point on the south bank of Little Caney Creek. This point on the south bank of Little Caney Creek was originally located by surveyor Wade in 1861 and witnessed by a 12 inch pine marked "X" bearing S 6° E 8 varas and a 12 inch pine marked "X" bearing N 3° E 4 varas.

9. The point on the south bank of Little Caney Creek was located in 1910 by surveyor Clinton Bybee as reflected in the field notes of his survey of the W. H. Rigell homeplace.

10. The south corner of Washington County Railroad Company survey No. 1 was established by the District Court of San Jacinto County, Texas, on November 12, 1909, in Cause No. 1219, styled B. H. Bassett v. W. H. Rigell, as follows:

At a stake for corner on the south bank of Little Caney Creek the same being the Southwest Corner of said Section No. One, Washington County Railroad Survey from which a large pine snag 38 in. dia mkd X (old mark) brs. N 42 E 30 ft. and a

Sweetgum 20 in. dia mkd X brs S 42 E 11 ft in the north boundary line of R. A. Peebles Survey and also corner of Section No. Two.

11. The south corner of Washington County Railroad Company survey No. 1 was established by the District Court of Montgomery County, Texas, on May 20, 1932, in Cause No. 17,364, styled W. H. Rigell v. Ed Mays, as follows:

At the most Southern Corner of Section No. One Washington County Railroad Survey in San Jacinto County, Texas, a stake from which a sweet gum mkd x brs. N 25 E 17½ vrs.

12. The south corner of Washington County Railroad Company survey No. 1 was located by surveyors J. W. Oliphint, J. V. Butler and W. T. Robinson on April 30, 1929, in their search for confirmative evidence of the south corner of the Riggs survey. Similarly, this corner was located by surveyor Morgan in 1967 as reflected in his field notes.

13. The south corner of the Washington County Railroad Company survey No. 1 is on an extension of a line from U.S. Forest Service monument J–156 to J–226.

14. Surveyor Wade intended the east corner of the Washington County Railroad Company survey No. 1 to be common with the south corner of the Riggs survey.

15. The east corner of the Washington County Railroad Company survey No. 1 is common with the south corner of the Riggs survey and is presently marked or monumented by U.S. Forest Service monument J–226.

III. The Southwest Boundary of the Riggs Survey

1. The southwest boundary of the Riggs survey runs from U.S. Forest Service monument J–226 on a course N 46° W to the west corner. The latter corner is at a point of intersection with the northwest boundary of the survey. This corner actually falls within the adjoining de la Garza survey which is senior to the Riggs survey.

2. A U.S. Forest Service monument J–158 and a monument established by Foster Lumber Company mark the point of intersection of the southwest boundary of the Riggs survey with the de la Garza survey.

3. A line southwest of and parallel to the southwest boundary of the Riggs survey was surveyed on the land of the Washington County Railroad Company, the Eveline Woodford survey and the de la Garza survey by surveyor J. W. Oliphint in 1912. However, the line surveyed by this surveyor does not extend to or intersect the southeast boundary of the Washington County Railroad Company survey No. 1.

4. Surveyor J. W. Oliphint was in error when he surveyed this line and established a corner for the Riggs survey some 101 varas northwest of the southeast boundary of Washington County Railroad Company survey No. 1. This corner is also some 109 varas southwest of the southwest boundary of the Riggs survey.

5. It appears that surveyor J. W. Oliphint corrected his original survey of 1912. This surveyor was a member of the survey crew of the 1929 Gibbs Brothers and Company survey when the stump holes fitting the description of the witness trees marked by surveyor J. S. Collard were found and a stake set for the corner. This surveyor was also a member of the survey crew of the 1933 Gibbs Brothers and Company survey. This survey set a stake for the south corner of the Riggs survey at the intersection of old marked lines adjacent to pine stump holes which fit the description of the patent field note trees. The latter survey crew then further perpetuated the corner by marking other trees.

IV. The Northwest Boundary of the Riggs Survey

1. The northwest boundary is well established by the U.S. Forest Service, and its location is not controverted by any evidence which was forthcoming at the trial of this cause.

2. This boundary runs on a course S 44° W from U.S. Forest Service monument J–126 to J–158.

V. The Northeast Boundary of the Riggs Survey

1. The northeast boundary is well established by the U.S. Forest Service, and its location is not controverted by any evidence which was forthcoming at the trial of this cause.

2. This boundary runs on a course S 46° E from U.S. Forest Service monument J–126 to U.S. Forest Service monument J–156.

VI. The Riggs Survey In General

1. It appears clear that with reference to the land within the Riggs survey there have been no disputes between the grantors to the Government, Gibbs Brothers and Company, and the adjoining owners of the land within Washington County Railroad Company surveys Nos. 1 and 5.

2. It appears clear that there have been no disputes regarding the southeast boundary and the southwest boundary of the Riggs survey between the Government and adjoining survey owners until the defendant purchased the Washington County Railroad Company surveys from Ed Mays in 1948.

3. The Government went into possession of the land within the Riggs survey on August 12, 1939.

4. Former adjoining survey owner Ed Mays recognized the boundaries monumented by the U.S. Forest Service and, in fact, instructed his employee, Ray Griffith, not to cut timber across the then U.S. Forest Service marked line.

5. The primary use of the property in the Riggs survey has been to the boundaries marked by U.S. Forest Service monuments J–156 and J–226.

6. The distance along the various boundaries of the Riggs survey are found to be as follows: Southeast boundary 4,133.0 varas; southwest boundary 4,203.3 varas; northwest

boundary 4,001.4 varas; and northeast boundary 4,162.1 varas.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this cause.

■■ 2. The purpose of the inquiry in a boundary dispute action is to locate and follow the footsteps of the original surveyor. Goodson v. Fitzgerald, 40 Tex.Civ.App. 619, 90 S.W. 898 (1905). Various rules of construction for purposes of ascertaining boundaries have been adopted by the courts to aid in following the surveyor's footsteps. In accordance with these rules the priority of the calls which are found in the original surveyor's field notes is as follows: (1) natural objects; (2) artificial objects; (3) courses; (4) distances; and (5) quantities. Newsom v. Pryor's Lessee, 20 U.S. (7 Wheat.) 7, 5 L.Ed. 382 (1822); Stafford v. King, 30 Tex. 257 (1867); Thomas Jordon, Inc. v. Skelly Oil Co., 296 S.W.2d 279 (Tex.Civ.App., Texarkana 1956, writ ref'd n.r.e.).

■ The purpose of the rules of priority of calls in an original survey is to aid the Court in finding the best evidence of what the original surveyor actually did on the ground. In the event the footsteps of the original surveyor can be more accurately traced or his intention more accurately ascertained by following a call of lower order, then the rules of priority are inapplicable. See Linney v. Wood, 66 Tex. 22, 17 S.W. 244 (1886).

■ These rules of construction are designed to carry out the intention of the parties. The intention of the parties is considered to be essentially the same as that of the surveyor. Strong v. Sunray DX Oil Co., 448 S.W. 2d 728 (Tex.Civ.App., Corpus Christi 1969, writ ref'd n. r. e.). The surveyor's intention is to be ascertained by scrutinizing what he actually did in making the survey as reflected by his field notes and the attending totality of circumstances of the survey. Blake v.

Pure Oil Co., 128 Tex. 536, 100 S.W.2d 1009 (Tex.Com.App.1937); Finberg v. Gilbert, 104 Tex. 539, 141 S.W. 82 (1911); Atwood v. Willacy County Navigation District, 271 S.W.2d 137 (Tex. Civ.App., San Antonio 1954, writ ref'd n. r. e.). It is well established that the various calls contained within the field notes must be harmonized and as few calls as possible disregarded so that the calls which result in the least conflicts in the total survey are given precedence. Wilson v. Giraud, 111 Tex. 253, 231 S.W. 1074 (1921). See Orn, Vanishing Footsteps of the Original Surveyor, 3 Baylor L.Rev. 273 (1952).

■ 3. It is readily apparent that there is an ambiguity in the description contained within surveyor Collard's field notes, since the survey fails to close as it should and does not coincide with the sketch on the original field notes. The various subsequent resurveys do not coincide with either the original field note description or the field note sketch. It is therefore necessary to apply the various rules of construction and admit parol evidence to resolve the conflicts and to establish the lines which were actually run by the surveyor. See Bond v. Middleton, 137 Tex. 550, 155 S.W.2d 789 (1941).

■ 4. The burden of proof is upon the Government to locate and prove the boundary by a preponderance of the evidence. See Brown v. Eubank, 378 S. W.2d 707 (Tex.Civ.App., Tyler 1964, writ ref'd n. r. e.); Hancock v. Bennett, 230 S.W.2d 328 (Tex.Civ.App., Waco 1950, no writ hist.). In establishing the existence and location of original witness trees the Government must introduce sufficient evidence "[to] carry the case beyond coincidence and into the realm of [a reasonable certainty]." Kirby Lumber Corp. v. Lindsey, 455 S. W.2d 733, 740 (Tex.1970). See Gates v. Asher, 154 Tex. 538, 280 S.W.2d 247 (1955).

■ 5. There is a presumption that surveyor Collard actually surveyed all the lines of the Riggs survey, ran the

course and distances and marked the boundaries as called for in the field notes. A survey must be so construed unless later surveyors following the original surveyor's footsteps demonstrate that the original surveyor's calls constitute a mistake or are otherwise incorrect. Gibson v. Universal Realty Co., 378 S.W.2d 115 (Tex.Civ.App., Houston 1964, writ ref'd n.r.e.); State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228 (Tex. Com.App.1936).

■ 6. A period of 135 years has elapsed since the Riggs survey was located. Time has destroyed the original witness trees marked by surveyor J. S. Collard. However, the calls contained within the field notes for two pine witness trees at the south corner of the survey can still be identified with reasonable certainty. Two stump holes have been identified by credible evidence as being at the intersection of old and well-marked boundary lines. Construing the field notes for the patent of the Riggs survey in light of all the surrounding circumstances, these calls are the most certain and positive factors available in locating the footsteps of the original surveyor. See Kirby Lumber Corp. v. Lindsey, 455 S.W.2d 733 (Tex. 1970); East Texas Pulp and Paper Co. v. Cox, 381 S.W.2d 78 (Tex.Civ.App., Beaumont 1964, writ ref'd n. r. e.); Muldoon v. Sternenberg, 139 Tex. 22, 161 S.W.2d 783 (Tex.Com.App.1942); Miller v. Southland Life Ins. Co., 68 S. W.2d 558 (Tex.Civ.App., El Paso 1934, no writ hist.); Smith v. Turner, 13 S. W.2d 152 (Tex.Civ.App., El Paso 1928), rev'd on other grounds, 122 Tex. 338, 61 S.W.2d 792 (1933); Plowman v. Miller, 27 S.W.2d 612 (Tex.Civ.App., El Paso 1930, writ dism'd); Petty v. Paggi Bros. Oil Co., 254 S.W. 565 (Tex.Com. App.1923); Antone v. Hoffman, 256 S. W. 656 (Tex.Civ.App., Texarkana 1923); Wm. Cameron & Co. v. Taylor, 288 S.W. 268 (Tex.Civ.App., Beaumont 1926); Weatherly v. Jackson, 98 S.W.2d 1037 (Tex.Civ.App., San Antonio 1936, writ dism'd); Findlay v. State, 238 S.W. 956 (Tex.Civ.App., Austin 1921), aff'd, 113 Tex. 30, 250 S.W. 651 (1923). Compare Kirby Lumber Co. v. Adams, 127 Tex. 376, 93 S.W.2d 382 (Tex.Com.App. 1936); Runkle v. Smith, 63 Tex.Civ. App. 549, 133 S.W. 745 (1911).

7. The resurvey conducted by Gibbs Brothers and Company in 1929 and the resurvey of surveyor Morgan in 1967 tend to locate and reestablish the corners and the boundary line of the original survey. See Barnes v. Wingate, 342 S.W.2d 352 (Tex.Civ.App., Beaumont 1960, writ dism'd); East Texas Pulp and Paper Co. v. Cox, 381 S.W.2d 78 (Tex.Civ.App., Beaumont 1964, writ ref'd n. r. e.).

■ 8. Since the footsteps of surveyor J. S. Collard have been identified with reasonable certainty, it is apparent that the calls for distances in the original field notes are erroneous. The first call of 4,096.6 varas actual should be 4,133.0 varas, the second call of 4,096.6 varas actually should be 4,203.3 varas, the third call of 4,056.0 varas actually should be 4,001.4 varas and the fourth call of 4,104.6 varas actually should be 4,162.1 varas. See Sansing v. Bricka, 159 S.W.2d 142 (Tex.Civ.App., Amarillo 1941, writ ref'd w. o. m.).

9. A period of more than 100 years has elapsed since the adjoining Washington County Railroad Company survey No. 1 was located. The original witness trees marked by surveyor J. M. Wade have deteriorated and vanished. However, a stake on the south or southwest bank of Little Caney Creek has been perpetuated through the years by resurveys. One such resurvey was by Clinton Bybee in 1910. Both Gibbs Brothers and Company in 1929 and surveyor Morgan in 1967 cited and reported the Bybee survey witness trees. Surveyor Morgan also found a stump hole of one of the original witness trees marked by surveyor Wade. A line from U.S. Forest Service monument J–156 on a course S 44° W would pass through the south corner of the Riggs survey and intersect the south corner of Washington County Railroad Company survey No. 1. As a

result, the south corner of the Riggs survey at U.S. Forest Service monument J–226 is further established.

10. The southeast boundary of the Riggs survey, as marked by monuments J–156 and J–226 has been acquiesced in by the adjacent survey owners for a comparatively long period of time. *See* Kirby Lumber Corp. v. Lindsey, 455 S. W.2d 733 (Tex.1970); Bolton v. Lann, 16 Tex. 96 (1856).

. [14] 11. The declarations of Ed Mays as prior owner of an adjoining survey which acknowledged the boundary line proffered by the Government is supportive evidence of the actual boundary. *See* Goodson v. Fitzgerald, 40 Tex.Civ.App. 619, 90 S.W. 898 (1905).

■ 12. The defendant is bound by its actions in purchasing property in Washington County Railroad Company survey No. 1 by deeds from Ed Mays in 1948 and L & M Lumber Company in 1961 as well as a special warranty deed in 1968. These recorded deeds describe the property as having its south corner on Little Caney Creek. The defendant is also bound by its actions in leasing property in Washington County Railroad Company survey No. 1 to L. A. Carnes by leases dated July 22, 1958, March 5, 1963, and June 26, 1970. In these leases the description of the south corner of the survey is by reference to the defendant's deeds. *See* Reynolds v. Bradford, 233 S.W.2d 464 (Tex.Civ.App., Fort Worth 1950, no writ hist.); Pierce v. Schram, 53 S.W. 716 (Tex.Civ.App. 1899); Linney v. Wood, 66 Tex. 22, 17 S.W. 244 (1886).

■ 13. The defendant presented no evidence establishing or tending to establish the footsteps of surveyor J. M. Wade in running the original surveys of the adjoining Washington County Railroad Company survey No. 1 through No. 6. Defendant's evidence reflects that no patent evidence was available, and as a result it failed to identify the sources and to connect the source of its evidence to the original patent witness calls.

14. The Government has presented substantial credible evidence locating the east corner of the Riggs survey at a point now monumented by U.S. Forest Service monument J–156. There is no evidence before the Court other than that presented by the Government which locates the east corner of the Riggs survey.

15. The Government has presented substantial credible evidence locating the south corner of the Riggs survey and the east corner of the Washington County Railroad Company survey No. 1. The defendant has presented no credible evidence tending to locate the south corner of the Riggs survey or the east corner of the Washington County Railroad Company survey No. 1.

16. The greater weight of the credible evidence adduced at the trial of this cause establishes the southeast boundary of the Riggs survey to be at a line connecting U.S. Forest Service monuments J–156 and J–226.

The foregoing constitute the Court's Findings of Fact and Conclusions of Law. Counsel will prepare and submit an appropriate judgment within ten (10) days incorporating these Findings of Fact and Conclusions of Law. The Clerk will notify counsel.