Samuel Everett McHARD, Jr., et al.,
Appellants,

v.

The STATE of Texas et al., Appellees.

No. 952.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 24, 1974.

Rehearing Denied May 15, 1974.

Clark G. Thompson, Richard E. Bartley, Houston, for appellants.

John L. Hill, Jr., Atty. Gen., Harold G. Kennedy, Austin, Morgan L. Copeland, Houston, for appellees.

TUNKS, Chief Justice.

This is a trespass to try title case.

The State of Texas and Gulf Oil Corporation were the plaintiffs in the trial court. Samuel Everett McHard, Jr., was the principal defendant. This case involves a tract of land approximately rectangular in shape. The tract is about 2525 feet north and south and 390 feet east and west. The land is alleged by plaintiffs to be in the J. Poitevent Survey # 4 in Fort Bend County, Texas. The defendants alleged that the land does not lie in the Poitevent 4, but instead lies within the Moses Merritt Survey in that county. The Poitevent 4 and the Merritt lie with the east line of the Poitevent being adjacent to, or east of, the west line of the Merritt. The parties stipulated that the plaintiffs were the owners of the Poitevent 4 and McHard was the owner of the Merritt. The Poitevent 4 is the senior of the two surveys. It is the contention of the plaintiffs that there is an overlapping of the two surveys as to the land in question. If the land lies in the Poitevent 4, since it is the senior survey, they are entitled to judgment for title to the property. That is to say, the plaintiffs claim that the east line of the Poitevent 4 lies to the east of the west line of the Merritt. McHard and his predecessors in title have been in fenced possession of the land for many years. Thus the case involves the establishment by the plaintiffs of the east boundary of the Poitevent 4.

The trial court first submitted the case to the jury. After the jury had returned a verdict which was considered to consist of conflicting findings, the case was withdrawn from the jury, and judgment was rendered for the plaintiffs. Thus, to prevail, the plaintiffs were bound to establish their claim as a matter of law.

There is attached to this opinion a sketch of that portion of Fort Bend County which is relevant to this discussion of the evidence. That sketch and the figures on it will be referred to in such discussion. It was compiled from maps offered in evidence by the parties. The land in controversy is the rectangle included within the points numbered 7 to 17 to 19 to 20 to 7. The line from 17 to 19 is admittedly the west boundary of the Merritt. It is contended by the plaintiffs that the line from 7 through 20 to 6 is the east line of the Poitevent 4.

The oldest survey of those shown on the sketch is the David Bright League. It was surveyed in 1824 by Horatio Chriesman, the surveyor for Stephen F. Austin's colony. In making that survey, he identified the southwest corner by reference to natural monuments, which were identified trees. The other corners are identified by calls for a course and distance from the southwest corner. The calls are for north 5000 varas from the southwest corner to the northwest corner, 5000 varas east to the northeast corner, 5000 varas south to the southeast corner, and 5000 varas west back to the southwest corner, the place of beginning. Other relevant surveys shown on the sketch are the Hicks Shropshire, the Thos. Hobermaker, the Edward Drew, the J. Poitevent 3, the Thos. W. Thompson, and the Poitevent 4. All lie to the east of the David Bright League; all were surveyed by George Schley. The field notes for all were dated in December of 1874. All of them depend, for the establishment of their eastern and western boundaries, upon the location of the eastern or western boundary of the David Bright League. All of them call, directly or indirectly, for a distance from the western boundary of the David Bright League. None of their field notes call for either any natural or artificial monuments by which any of their eastern or western boundaries can be fixed. The Merritt was surveyed by Schley in 1875. Thus it became necessary, if the

eastern boundary of the Poitevent 4 was to be identified, to identify some corner of the David Bright League. It then became necessary to follow the footsteps of George Schley for a distance of about 20,000 feet to the eastern boundary of the Poitevent 4, without the benefit of any monument as none was called for by Schley in making the blocks of surveys.

The only surveyor to testify in this case was Harold B. Fisher, a licensed surveyor, called as a witness by the plaintiffs. We shall first examine his testimony as to the identification of the Bright League as a beginning point by which to find the east boundary of the Poitevent 4.

Fisher relied, in part, on the field notes of S. M. Fore who made a resurvey of the Bright League in 1891. Those notes recite that Mr. Fore found the witness trees called for by Chriesman in the original survey as identifying the southwest corner. He also marked a new witness tree. His notes indicate that he then proceeded around the boundary and called for crossing certain streams at certain points.

H. J. Walger surveyed a part of Fort Bend County, including the Bright League, from 1892 to 1896 for the purpose of locating a county road. His field notes show that he set a railroad iron at the northwest, northeast, and southeast corners. His field notes did not refer to the witness trees referred to by Chriesman and Fore.

C. R. Hale made surveys in 1956. He found a railroad iron at what he identified as the common corner of the southeast corner of the Bright League and the southwest corner of the Shropshire survey. He also found such a railroad iron at the northeast corner of the Bright League.

Fisher, in his effort to fix the corners and boundaries of the Bright League, did not find any of the witness trees called for by Chriesman and Fore as marking the southwest corner of that league. He found five iron rods set in the intersection of the road beds running along what appeared to be the south line and the west line of the league. He tentatively accepted this as the southwest corner. From there he proceeded north along the line of Farm Road 1092. At 2747 varas he crossed Oyster Creek. Fore had called for this crossing as "about 2700 varas." At 3967 varas he crossed Red Gully. Fore called for such crossing as 3977 varas.

At the occupied north line of the Bright League Fisher found a railroad iron buried in the road which he accepted as the one set to mark the northwest corner by Walger. He then proceeded easterly, crossing Stafford Run Creek at 1526 varas. Fore called for that crossing at 1488 varas. At 3601 varas he found a railroad iron in the north occupied line of the League. Walger's notes indicate that he set this marker. He proceeded on easterly and at a point 1399 varas further on he found the railroad iron Walger had set as marking the northeast corner of the League. Walger's notes called for this latter distance as 3884 feet. This point is marked No. 1 on the attached sketch. Fisher found this point to be 5000.37 varas from what he had accepted as the northwest corner. Chriesman had called for a distance of 5000 varas along the north line of the League. This is the point from which Fisher began the east and west computations along the north side of the surveys intervening between the east line of the Bright League and the east line of the Poitevent 4.

Fisher then proceeded down the occupied east line of the League to the occupied southeast corner. He did not find the railroad iron that Walger said he set at the southeast corner of the League. However, Hale, an earlier surveyor, had said that he found the iron at a point 35 feet south of and in line with the occupied east line. Fisher accepted that point as the southeast corner of the League. It was from this point that he began his east and west computations along the south edge of the inter-

vening surveys. The point is marked No. 8 on the sketch.

From that point Fisher headed westerly along the gravel road lying along the south line of the League. At 1973 varas he crossed Millstead Creek. Fore had called for such a crossing at 1988 varas and Walger at 1976 varas. At 2867 varas he crossed Oyster Creek. Fore had called for such crossing at 2877 varas and Walger at 2860 varas. At 5001 varas he came back to the iron rods at the southwest corner where he had begun.

This is the method Fisher used to fix the corners of the Bright League. He did not find the witness trees by which the original surveyor had marked the southwest corner. Fore did, however, find the trees and made calls for various stream crossings, which fit as closely as can be expected with Fisher's survey, beginning at the accepted southwest corner. The lines so established are the lines fitting the evidence of occupancy as indicated by roads and fences. The lines did not fit exactly the calls for course and distance used by the original surveyor, Chriesman, but they were very close, and the fence lines and roads indicate many years of occupancy in accordance with the calls for course and distance followed by Fisher.

■ In order to establish, as a matter of law, the lines of a survey, it is not necessary to establish them "beyond all peradventure of doubt." It is sufficient that they be fixed with "reasonable certainty." Kirby Lumber Corporation v. Lindsey, 455 S.W.2d 733, 740 (Tex.Sup.1970). On the basis of that authority we hold that the testimony of Fisher, corroborated by the recitations in the field notes of earlier surveyors, fixed, as a matter of law, the location of the northeast and southeast corners of the Bright League, the points from which he began his survey to the east for the purpose of fixing the eastern boundary of the Poitevent 4.

All of the surveys east of the Bright League up to and including the Poitevent 4 were built off of the east line of the Bright. All were made by George H. Schley. The Drew, the Poitevent 3, the Poitevent 4, the Thompson, and the Hooper were dated December 22, 1874. The Shropshire was dated December 24, 1874. All six were filed on December 31, 1874. In none of the six named surveys was there any call for a natural or an artificial monument. There were calls for adjoinder of the various surveys as shown on the sketch. There were calls for the northernmost boundaries of the Poitevent 3 and the Poitvent 4 to adjoin with the Fort Bend-Harris County line, but the testimony was that such county line had been moved since the date of the surveys. It seems probable, in view of the dates of the six surveys and the absence of calls for monuments, that they were office surveys, made without actually going on the ground. The witness, Fisher, pointed out that Schley may have made the surveys on the ground over a longer period of time and signed his notes on all of them on the same day. Nevertheless, the fact remains that Fisher had nothing to go on from the surveys themselves but calls for course and distance and the calls for adjoinder.

Fisher very carefully followed east-west lines along the northern lines of the Drew, Poitevent 3, and the Poitevent 4. He fixed the points shown on the sketch as 1, 2, 3, 4, 5, and 6. He then began at the point marked 8 on the sketch and fixed the points marked 9, 10, 16, 11, 12, 13 and 7. He fixed the eastern boundary of the Poitevent 4 as the line between 6 and 7 shown on the sketch.

In his survey of the east and west lines Fisher relied in part on the evidence of occupancy which he found. It is true that in some instances the occupancy on the east and west side of the common north-south boundary lines were by the same owner, the Texas Prison System, but that is not true as to all of the occupancy. The southwest corner of the Poitevent 4, the southwest corner of the Poitevent 3 and tracts adjacent to both the east and west

lines of that survey, and the southwest corner of the Drew were not owned by the State. Fisher's testimony as to occupancy was corroborated by the oral testimony of other witnesses and by aerial photography.

, He also gave consideration to the works of earlier surveyors. For instance, at points 6 and 7 he found ¾ inch pipes set by a former surveyor, J. P. Boyles, as marking the northeast and southeast corners of the Poitevent 4. Boyles made surveys in the vicinity in 1919, 1946, and 1953.

Fisher, in fixing the eastern boundary at a line between points 6 and 7 on the sketch, was less than 70 feet east of where the line would have been if he had honored all of the calls for distance made by Schley in his surveys of the various tracts between the Bright League and the east line of the Poitevent 4, a distance of more than 20,000 feet.

It is certain that the east line of the Poitevent 4 is not as contended by McHard. Schley called the line as running north and south. All of the various surveyors who had surveyed it before called for such line as running approximately north and south. No one has ever called for it as running north and south between the points marked as 6 and 20, then jogging to the west.

All of the plaintiff's testimony was uncontradicted except to the extent that such contradiction arose from the previous possession of McHard and his predecessors.

In Taylor v. Higgins Oil & Fuel Co., 2 S.W.2d 288, 300 (Tex.Civ.App.—Beaumont 1928, writ dism'd), the court said:

> By the "best evidence," in its application to a boundary issue, is meant that evidence which is the more specific and definite as against that which is merely general and indefinite or descriptive. This may be a question of fact for the jury, or one of law for the court. It is always a question of law when upon the particular facts of the case the rule announced in Stafford v. King [30 Tex. 257] [the preferential order of calls] is controlling. It also becomes a question of law when that rule has no application, but when upon the particular facts reasonable minds cannot differ as to the conclusions legally deducible from the facts. Southwestern Settlement & Development Co. v. Stanberg (Tex.Civ. App.), 248 S.W. 108. When one theory of the case is supported by specific and definite facts, while the other is supported by evidence merely general and indefinite or descriptive, the issue is one of law for the court and not of fact for the jury.

Other cases supporting the position of these plaintiffs are Mortgage Investment Company of El Paso v. Bauer, 493 S.W.2d 339 (Tex.Civ.App.—El Paso 1973, writ ref'd n. r. e.), and Wood v. Stone, 359 S. W.2d 68 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.).

■ During the trial the court admitted certain corrected field notes of Schley and overruled the defendant's objection that they were relocations of the relevant surveys. The record does not reflect that the original field notes did not cover the ground included in the corrected field notes. The trial court, therefore, did not err in admitting the corrected notes. Tex. & Pac. Ry. Co. v. Thompson, 65 Tex. 186 (1885).

We hold that the plaintiffs have established as a matter of law that the property in controversy lies within the Poitevent 4. Since the Poitevent 4 is senior to the Merritt survey it prevails as to any conflict. It is stipulated, for the purpose of this case, that the plaintiffs are the owners of the land in the Poitevent 4 and the trial court properly adjudged title in them of the land in controversy.

Affirmed.